RENEE A. BAUMANN AND CLAUDE P. BAUMANN, PLAIN-TIFFS-RESPONDENTS, v. KIMBERLY M. MARINARO AND NICHOLAS A. MARINARO, DEFENDANTS-APPELLANTS.

Argued October 25, 1983—Decided February 7, 1984.

382

*Douglas S. Brierley* argued the cause for appellants (*Schenck, Price, Smith & King,* attorneys; *Harold A. Price* and *Edward W. Ahart,* of counsel).

*Donald L. Minassian* argued the cause for respondents (*Draesel, Sunshine & Atkins,* attorneys).

The opinion of the Court was delivered by
GARIBALDI, J.

This appeal involves the interrelationship between post-trial motions made pursuant to *R.* 4:49–1, *R.* 4:49–2 and *R.* 4:50–1. Specifically, the issues presented are: (1) May the time to file a motion for a new trial under *R.* 4:49–1 be extended under extenuating circumstances; (2) Does a motion to alter and amend judgment under *R.* 4:49–2 include a motion to vacate judgment; (3) Does an untimely motion for a new trial under *R.* 4:49–1 preclude a motion for relief from judgment under *R.* 4:50–1; and (4) What grounds are necessary to sustain a motion under *R.* 4:50–1(a) or (f)?

I

This case arises from an automobile accident that occurred on October 24, 1975. Plaintiff Renee A. Baumann was a passenger in a Volkswagen, owned by defendant Nicholas A. Marinaro and driven by his daughter, defendant Kimberly Marinaro. Renee and Kimberly were on their way to a party at a friend's house when Kimberly lost control of the car and struck a utility pole. Renee hit the windshield of the car and incurred injuries including a chipped tooth, a bloody nose, pain in her spine, and cuts on her knees, forehead, and lower lip.

Renee was taken to the hospital where she was treated in the emergency room as an out-patient and released later that night. After the accident, Renee consulted two dentists, to have her chipped tooth capped; an orthopedic surgeon, to treat pain in her back and hip; a plastic surgeon, to remove two small facial scars; an osteopath, to administer heat applications to her back; and a chiropractor for 60 visits between May 1976 and July 1977, also to treat her back.

Approximately two years after the accident, Renee and her father, Claude Baumann, filed a two-count complaint against Kimberly and her father. In the first count, Renee claimed damages against both defendants due to Kimberly's negligent operation of her father's car. In the second count, Renee's

father claimed damages for lost services and for medical expenses.

At the trial, plaintiffs' witnesses were Renee, her parents, and her chiropractor. Plaintiffs also submitted by stipulation a report from Renee's dentist, Dr. John E. Walsh. The evidence admitted at trial focused primarily on Renee's alleged lumbosacral spine injury, broken tooth, and hip injury.

The chiropractor testified that Renee suffered some permanent disability in her lower lumbar spine. Renee testified that she continued to suffer pain in her neck, spine and hip, and both she and her parents testified that the accident had affected her emotionally. According to their testimony, the accident caused Renee, then 17, to discontinue her previously active social life, become antagonistic and insolent toward her family, and to gain 50 pounds.

Since their trial counsel did not contact them to appear for the proceeding, defendants were not present at the trial. Defendants' counsel called only one witness, one of Renee's orthopedic surgeons, who testified that no corrective surgery was contemplated.

The Court granted plaintiffs' motion for a directed verdict as to the liability of both defendants; this motion was unopposed by defendants' trial counsel. After granting the directed verdict for plaintiffs on the liability issue, the trial court charged the jury on the issue of damages. After a brief deliberation, the jury returned and requested further clarification from the court on how it should value Renee's injuries.[1] At that point the trial court gave the jury an abridged statement of his prior instructions. The jury returned a verdict on July 21, 1980 in the amount of $250,000.00, plus interest of $55,555.00, in favor of

---

[1]On returning to the courtroom the jury asked the trial judge the following question, "[A]re we, the jury, to determine the exact amount of damage to be awarded to the plaintiff.... We feel at a loss as to how to determine the amount of money to be awarded. Any help would be appreciated."

plaintiff Renee Baumann; the jury allowed no award to Claude Baumann for medical expenses or lost services. The trial court then directed that an order of judgment be prepared.

The following day, July 22, counsel for both parties met with the trial judge to discuss the issue of agency and the alleged liability of Nicholas Marinaro for his daughter's operation of the car. Thereafter, on July 31, 1980, Judge DiGisi entered an order of liability against both defendants.

Sixteen days after the jury had entered the verdict, defendants' trial counsel filed a notice of motion that stated in part:

pursuant to *Rule* 4:49–1 [2] seeking an order for a new trial and setting aside the jury verdict rendered in favor of the plaintiff and against the defendants on the grounds that said verdict was against the weight of evidence * * * and in the alternative, if the relief hereinabove sought is denied, an order for remittitur and the monetary verdict in favor of the plaintiff will be sought * * * and further * * * in the event the application for relief hereinabove set forth are denied, the undersigned shall also seek to vacate the judgment entered against the co-defendant, Nicholas A. Marinaro. [Footnote added.]

The trial court heard this motion on September 19, 1980. At the hearing, the court stated in part:

when you weigh [the extent of the injuries] * * * I have to say that the amount of the verdict shocked my conscience. And I don't use those words in an artistic way or have the Appellate Court think I'm using the magic words. It is in fact for the reasons of the medical testimony that was presented before * * *. It absolutely shocked me, and in this case I think it's a clear, clear case that if it remains, if the verdict remains, that it's a miscarriage of justice under the law as to the excessiveness of the verdict in relation to the injuries that were testified to and the evidence that has been submitted to the jury and to the court.

The trial court then delivered an oral ruling, ordering a new trial limited to the issues of damages and agency. Upon plaintiffs' subsequent motion, the court vacated this order on the grounds that defendants' August 6 motion was untimely.

Thereafter, the parties filed several motions and cross-motions, including defendants' motion for relief from the judgment, pursuant to *R.* 4:50–1, filed on October 30, 1980. The trial

[2]Pursuant to *R.* 2:10–1, the issue of whether a jury verdict is against the weight of the evidence is not cognizable on appeal unless a motion for a new trial on that ground is made in the trial court.

court denied this motion, saying that to grant it would allow defendants to circumvent *R.* 4:49–1 and *R.* 1:3–4(c).[3] The Appellate Division affirmed the trial court holding that defendants' motion for a new trial, pursuant to *R.* 4:49–1, was untimely and that the court had no discretion to extend the time even "under extenuating circumstances." The court also agreed that a motion for relief pursuant to *R.* 4:50–1 "cannot circumvent the ten day time limitation in *R.* 4:49–1 to challenge the weight of evidence supporting a jury verdict" or to review trial error.

Defendants filed a petition for certification and requested that we remand the case to the Appellate Division for rehearing on the issues of agency and the timeliness of Nicholas Marinaro's motion pursuant to *R.* 4:49–2. Defendants argued that the motion made on August 6, 1980 included a motion to vacate the judgment against defendant, Nicholas Marinaro under *R.* 4:49–2. We temporarily remanded the case to the Appellate Division. On rehearing, the Appellate Division affirmed the trial court.

We granted defendants' petition for certification. 93 *N.J.* 308 (1983). We affirm the Appellate Division with respect to Kimberly, but reverse with respect to defendant Nicholas Marinaro. We hold that Nicholas Marinaro's motion to alter and amend under *R.* 4:49–2 included a request to vacate the judgment against him, and was timely. We further hold that there was sufficient evidence to rebut the presumption of agency against him.

## II

*Rule 4:49–1*

■ Defendants initially sought a new trial under *R.* 4:49–1. Their motion was filed on August 6, 16 days after the jury

---

[3] 1:3–4. Enlargement of Time

* * * * * * * *

(c) Enlargements Prohibited. Neither the parties nor the court may, however, enlarge the time specified * * * *R.* 4:49–1 (motion for new trial); * * * *R.* 4:49–2 (motion to alter or amend a judgment) * * *.

returned its verdict on July 21. We agree with the lower courts that this motion was not timely because it was made more than 10 days after the jury returned its verdict.[4] See *R.* 4:49–1(b).

▮ Rule 1:3–4(c) provides that "[n]either the parties nor the court may * * * enlarge the time specified by * * * *R.* 4:49–1(b) and (c) * * *." This rule has been strictly enforced. As we stated in *Hodgson v. Applegate,* 31 *N.J.* 29, 36–37 (1959):

The rules contain clear and definite time limitations for motions before the trial court, i.e. * * * 10 days after * * * the entry of the verdict of the jury under *R.R.* 4:61–2, * * * These time limitations may not be enlarged. *R.R.* 1:27B(c).

In *Moich v. Passaic Terminal & Transportation Co., Inc.,* 82 *N.J.Super.* 353, 361 (App.Div.1964), the Appellate Division, relying on *Hodgson,* held that "notwithstanding the existence of extenuating circumstances, it has been consistently held that the trial court is without discretion to extend the time given by the rule." In its opinion the Appellate Division noted that power to relax the ten day rule was specifically barred by the Supreme Court in its adoption of the court rules, and that any attempt to circumvent this rule "would fly in the face of the intention of the Supreme Court in barring the enlargement of the ten day

---

[4]*R.* 4:49–1 provides in pertinent part:

4:49–1 Motion for New Trial

(a) Grounds of Motion. A new trial may be granted to all or any of the parties and as to all or part of the issues on motion made to the trial judge. * * * The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.

(b) Time for Motion, Cross-Motion; Affidavit. A motion for a new trial shall be served not later than 10 days after the court's conclusions are announced in nonjury actions or after the return of the verdict of the jury.

* * * * * * * *

(c) On Initiative of Court. Not later than 10 days after entry of judgment the court on its own motion may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter the court may grant a motion for a new trial timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

period and nullify the plain language of *R.R.* 1:27B(c)." (Now *R.* 1:3–4(c)). *Moich, supra,* 82 *N.J.Super.* at 362; *accord, Gussin v. Grossman,* 66 *N.J.Super.* 107 (Law Div. 1961); *Mastranduono v. Resnick,* 28 *N.J.Super.* 142 (Law Div. 1953).

We see no reason to depart from this line of cases. The policies of expedition and finality that underlie these time limitations would be defeated by extending the time to file a motion for a new trial under *R.* 4:49–1. Finality of judgments is essential to the efficient functioning of the court system; a litigant must know when an action is finally concluded. Thus, we affirm that the time to file a motion for a new trial under *R.* 4:49–1 cannot be enlarged regardless of extenuating circumstances. Accordingly, defendants' *R.* 4:49–1(a) motion for a new trial was properly denied as untimely.

### *R. 4:49–1(c)*

Defendants argue that since the trial court felt strongly about the excessiveness of the verdict, under *R.* 4:49–1(c) it should have exercised its right, on its own motion, to order a new trial; because it did not, it committed error. There is no merit to this argument.

*R.* 4:49–1(c) states in part that "the court on its own motion *may* order a new trial * * *." (Emphasis added.) Defendants attempt to construe this language to read the court *must* order a new trial. A motion for a new trial is addressed to the sound discretion of the trial court. *Quick Chek Food Stores v. Springfield Tp.,* 83 *N.J.* 438 (1980). Under the circumstances here, we believe that the trial court could have granted a new trial on its own motion but in reviewing its decision, we will not substitute our opinion for the trial court's because there was no abuse of discretion.

## III

*Rule 4:49–2*

Rule 4:49–2 states:

4:49–2.  Motion to Alter or Amend a Judgment

Except as otherwise provided by *R.* 1:13–1 (clerical errors) a motion to alter or amend a judgment shall be served not later than 10 days after entry of the judgment.

■ Defendants' August 6 motion contained a request for a new trial pursuant to *R.* 4:49–1 or in the alternative remittitur. In a separate paragraph, the motion also contained the following request for relief: "In the event the application for relief hereinabove are [sic] denied, the undersigned shall also seek to vacate the judgment entered against the co-defendant, Nicholas A. Marinaro." No mention of *R.* 4:49–2 was made. Defendants argue, however, that "[a]lthough not particularized, the above quoted language relating to vacation of the judgment was, in substance, a motion under R. 4:49–2 to alter or amend the judgment." Thus, defendants argue that a motion to alter and amend under *R.* 4:49–2 includes a motion to vacate. We agree.

This interpretation has already been accepted in *Hartford Ins. Group v. Marson Constr. Corp.,* 186 *N.J.Super.* 253 (App.Div. 1982), certif.den., 93 *N.J.* 247 (1983), wherein the court ruled that a motion to vacate a judgment was properly characterizable as a motion to alter or amend a judgment pursuant to *R.* 4:49–2. *Id.* at 261; *see also Pressler, Current N.J. Court Rules,* Comment *R.* 4:49–2 (1984).

■ *Hartford, supra,* 186 *N.J.Super.* at 261, is the only New Jersey case that addresses this issue; *Fed.R.Civ.P.* 59(e)[5] is substantially identical to *R.* 4:49–2. It is therefore proper to draw on the experience of the federal courts with that rule to aid in the solution of comparable problems that arise under our rule. *See, e.g., Hodgson, supra,* 31 *N.J.* at 35; and *Quick Chek Food Stores, supra,* 83 *N.J.* at 446.

---

[5]  (e) Motion to Alter or Amend a Judgment.  A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

*Fed.R.Civ.P.* 59(e) has been consistently interpreted as including a motion to vacate as well as a motion to amend and alter.

Although the motion under [59(e) ] is to "alter or amend" the judgment, it would perhaps be more accurate to say that subdivision (e) deals with motions to alter, amend, or *vacate.* It would be an unreasonably narrow position to hold that a judgment may be modified and amended only up to the thin line where it amounts to a vacation of the judgment altogether. [6A *Moore's Federal Practice* ¶ 59.12[1] (2d ed. 1982) (emphasis in original).]

*Accord, Huff v. Metropolitan Life Ins. Co.,* 675 *F.*2d 119, 122 (6th Cir.1982); *American Family Life Assurance Co. of Columbus v. Planned Marketing Associates, Inc.,* 389 *F.Supp.* 1141 (E.D.Va.1974). Accordingly, we hold that a motion to vacate is included within *R.* 4:49–2.

■ Rule 4:49–2 is distinguishable from motions for a new trial in that the time in which the motion must be made is "not later than 10 days after *entry of judgment.*" (Emphasis added.) Here the judgment was entered July 31, 1980, and the motion was filed on August 6, 1980. Hence, Nicholas Marinaro's motion was timely.

■ Further, we find from the record that as a matter of law there was sufficient evidence to rebut the factual presumption of agency between Nicholas Marinaro and Kimberly Marinaro. Thus, we hold that the trial court erred in directing a verdict against Nicholas Marinaro. *See Townsend v. Great Adventure,* 178 *N.J.Super.* 508 (App.Div.1981); *Harvey v. Craw,* 110 *N.J.Super.* 68 (App.Div.), certif. den., 56 *N.J.* 479 (1970); *Doran v. Thomsen,* 76 *N.J.L.* 754 (Sup.Ct.1908). Thus, as to Nicholas Marinaro only we vacate the judgment and enter judgment for him finding that he is not liable as a matter of law.

IV

*Rule 4:50–1*

Defendants also urge that they should be relieved from this judgment under *R.* 4:50–1. Defendants claim that they are not seeking the same relief they sought under *R.* 4:49–1. Rather,

they claim that the totality of errors, of their attorneys at trial of the trial court and of the jury in awarding an cite as support for their position *Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n.,* 74 *N.J.* 113, 120 (1977), wherein we said that "[*R.* 4:50–1] is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." *See also Hodgson, supra,* 31 *N.J.* at 35.

The lower courts held that defendants were precluded from using *R.* 4:50–1 because to do so would allow them to circumvent the time limitations under *R.* 4:49–1. We agree that *R.* 4:50–1 cannot be used to circumvent the time limitations of *R.* 4:49–1. However, we do not think that defendants are using the same facts as a basis for their *R.* 4:50–1 motion as they used for their *R.* 4:49–1 motion. The combination of errors upon which the *R.* 4:50–1 motion is based encompass errors at the trial and errors occurring after trial. Thus, defendants are not using *R.* 4:50–1 to circumvent *R.* 4:49–1 and we reach the issue of whether they have made out a claim under *R.* 4:50–1.

We have held that the failure to make a timely motion under *R.R.* 4:61–2 (the predecessor of *R.* 4:49–1) does not automatically preclude use of *R.R.* 4:62–2 (the predecessor of *R.* 4:50–1). *Hodgson, supra,* 31 *N.J.* at 34. *R.* 4:50–1 was patterned after *Fed.R.Civ.P.* 60(b), and "[i]t is therefore proper to draw on the experience of the federal courts with that rule . . . ." *Id.* at 35. The Third Circuit has consistently held that relief under *Fed.R. Civ.P.* 60(b) may be available despite the fact that new trial motions are not timely made. *See, e.g., Stradley v. Cortez,* 518 *F.*2d 488 (3d Cir.1975); *Massaro v. United States Lines Co.,* 307 *F.*2d 299 (3d Cir.1962); *John E. Smith's Sons Co. v. Lattimer Foundry & Mach. Co.,* 239 *F.*2d 815 (3d Cir.1956); *FDIC v. Alker,* 234 *F.*2d 113 (3d Cir.1956).

Thus, in the present case, we find that defendants are not automatically foreclosed from relief under R. 4:50–1 because they failed to make a timely motion under R. 4:49–1.[6]

Rule 4:50–1 provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. Absent exceptional and compelling circumstances, failure to obtain relief through the usual channels of appeal is not a reason justifying relief under R. 4:50–1. *Hodgson, supra,* 31 *N.J.* 29; *Manning Eng'g, Inc., supra,* 74 *N.J.* 113; *Palko v. Palko,* 73 *N.J.* 395 (1977); *Greenberg v. Owens,* 31 *N.J.* 402, 405 (1960); *see* 6 *Moore's Federal Practice* ¶ 60.27[2] (2d ed. 1982).

R. 4:50–1 sets forth six requirements for relief.[7] We now turn to a determination of whether defendants are able to meet any one of the six. Specifically, defendants assert that they are

---

[6]We disagree with the Appellate Division's holding that the R. 4:50–1 motion was untimely. Pursuant to R. 4:50–2, the motion must be made "within reasonable time and for reasons, (a), (b) and (c) of R. 4:50–1 not more than one year after the judgment, order or proceeding was entered or taken." In the present case, defendants' R. 4:50–1 motion was made on October 30, 1980, three months after the judgment was entered. We find therefore that the motion was timely. The reason that defendants are not automatically foreclosed from relief under R. 4:50–1 after making an untimely motion under R. 4:49–1 is because of the stringent requirements a party must meet to invoke relief under R. 4:50–1. It is not enough that defendants would have grounds for a new trial under R. 4:49–1; they must show exceptional circumstances. *See John E. Smith's Sons Co.,* 239 *F.*2d at 817 (interpreting Fed.R. Civ.P. 60(b) similarly).

[7]  RULE 4:50.  RELIEF FROM JUDGMENT OR ORDER.
    4:50–1.  Grounds of Motion
    On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect;  (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;  (d) the judgment or order is void;  (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application;  or (f) any other reason justifying relief from the operation of the judgment or order.

entitled to relief under *R.* 4:50–1 subsection (a) "mistake, inadvertence, surprise or excusable neglect," or subsection (f) "any other reason justifying relief from the operation of judgment or order." We disagree.

*R. 4:50–1(a)*

Although it is not entirely clear which part of subsection (a) defendants are relying on, it appears that they are primarily urging that trial counsel's errors constitute "excusable neglect" under *R.* 4:50–1(a). We do not agree. In *In re T,* 95 *N.J.Super.* 228, 235 (App.Div.1967), the court, although not specifying whether it was considering subsection (a) or (f), held that

[m]ere carelessness or lack of proper diligence on the part of an attorney is ordinarily not sufficient to entitle his clients to relief from an adverse judgment in a civil action.

\* \* \* \* \* \* \* \*

Such carelessness may be excusable when attributable to honest mistake, accident, or any cause not incompatible with proper diligence, but in such case the moving party is required to show a meritorious cause.

*See also Quagliato v. Bodner,* 115 *N.J.Super.* 133, 138 (App.Div. 1971) (counsel's tardiness in appearing on motion day was not "excusable neglect" justifying relief under *R.* 4:50–1(a)); *Schulwitz v. Shuster,* 27 *N.J.Super.* 554, 558 (App.Div.1953) (failure to appear in court and to answer interrogatories was inexcusable neglect not afforded relief under *R.* 4:50–1(a)). *Contra, Barber v. Turberville,* 218 *F.*2d 34 (D.C.Cir.1954).

Here, the trial counsel's errors complained of were not due to honest mistake, accident or any other course compatible with proper diligence. *In re T, supra,* 95 *N.J.* at 235. Failure to call witnesses, failure to inform defendants of the date of a hearing, failure to object to a directed verdict, and failure to file timely motions are all careless mistakes evidencing a lack of proper diligence.

Thus, we find here that the trial attorney's actions did not constitute "excusable neglect" pursuant to *R.* 4:50–1(a). Accordingly, we hold that defendants are not entitled to relief under this rule.

### R. 4:50–1(f)

Nor do we think that defendants are entitled to relief under subsection (f) of *R.* 4:50–1. We are mindful that this Court has repeatedly noted the broad parameters of a court's discretion to grant relief in exceptional situations under subsection (f). *See Manning Eng'g, Inc., supra,* 74 *N.J.* at 120; *Palko, supra,* 73 *N.J.* at 398; *Court Invest. Co. v. Perillo,* 48 *N.J.* 334 (1966); *Hodgson, supra,* 31 *N.J.* at 41. However, we also note that the importance of the finality of judgments should not be lightly dismissed. Thus, under both *R.* 4:50–1(f), and the identical federal rule *Fed.R.Civ.P.* 60(b)(6), relief is available only when truly exceptional circumstances are present and only when the court is presented with a reason not included among any of the reasons subject to the one year limitation. *Manning Eng'g, Inc., supra,* 74 *N.J.* at 120.

Because *R.* 4:50–1(f) deals with exceptional circumstances, each case must be resolved on its own particular facts. As we stated in *Palko, supra,* 73 *N.J.* at 398, "[n]o categorization can be made of the situations which would warrant redress under subsection (f)." In *Hodgson, supra,* 31 *N.J.* at 41, we said, "[t]he very essence of that subdivision [R. 4:50–1(f) ] is its ability to afford relief in exceptional situations. Thus, strict bounds should never confine its scope."

We are convinced that the circumstances here are not so exceptional as to entitle defendants to relief under *R.* 4:50–1(f). A comparison of two United States Supreme Court decisions, *Klapprott v. United States,* 335 *U.S.* 601, 69 *S.Ct.* 384, 93 *L.Ed.* 266 (1949), and *Ackermann v. United States,* 340 *U.S.* 193, 71 *S.Ct.* 209, 95 *L.Ed.* 207 (1950), construing the federal counterpart to *R.* 4:50–1(f), indicates the extraordinary circumstances necessary to invoke *R.* 4:50–1. In *Klapprott,* the Court found extraordinary circumstances; in *Ackermann,* it found no such circumstances.

In *Klapprott,* the plaintiff was ill, poor and unable to work when the federal district court began proceedings to cancel his

citizenship. He had no money to hire a lawyer and tried to represent himself *pro se*. He also sent a letter to the American Civil Liberties Union requesting help. Less than two months after denaturalization proceedings began, he was arrested for conspiring to violate the Selective Service Act and jailed. His letter to the ACLU was seized by the FBI and not forwarded to the ACLU. Ten days after his arrest, a default was entered against him in federal district court. He was convicted of the Selective Service offense, jailed in Michigan and transferred to Washington, D.C. and ten years later he was sent to Ellis Island for deportation due to lack of citizenship. There he moved pursuant to *Fed.R.Civ.P.* 60(b)(6) for relief from the default judgment. The Supreme Court found his case presented extraordinary circumstances justifying 60(b)(6) relief. *Klapprott, supra,* 535 *U.S.* at 613, 69 *S.Ct.* at 389, 93 *L.Ed.* at 277.

In *Ackermann,* plaintiff hired an attorney to represent him in the federal district court in denaturalization proceedings. No default was entered against him; on the contrary, defendant introduced much evidence in support of his position. Nevertheless, his citizenship was cancelled and he did not move for relief of the judgment under *Fed.R.Civ.P.* 60(b)(6) until 4 years later. Unlike *Klapprott,* he was never arrested or detained. "During all of that time he was free, well and able to defend himself, and in that regard had able counsel representing him in a trial in open court." *Ackermann, supra,* 340 *U.S.* at 201, 71 *S.Ct.* at 213, 95 *L.Ed.* at 212. The Supreme Court drew a contrast with *Klapprott* as to the factors relevant in finding no extraordinary circumstances; "no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence." *Ibid.* The Court refused to grant Ackermann relief under 60(b)(6).

Here, defendants had benefit of a trial; they were free to move for a new trial within the time limitations of *R.* 4:49–1; and they had the benefit of counsel. None of the circumstances in the present case is so extraordinary as to bring defendants

within *R.* 4:50–1(f) or is close to the circumstances present in the *Klapprott* case.

Defendants claim that their trial attorney's "gross neglect" is sufficient to invoke *R.* 4:50–1(f). Courts disagree, however, on when attorney error or neglect is a ground for relief under *R.* 4:50–1(f). *See* 7 *Moore's Federal Practice* ¶ 60.27[2] (2d ed. 1982); *see also id.* at ¶ 60.22[2] (attorney error under *Fed.R.Civ.P.* 60(b)(1)).

In *Boughner v. Secretary of Health, Education & Welfare,* 572 *F.*2d 976 (3d Cir.1978), the court granted defendants' *Fed.R. Civ.P.* 60(b)(6) motion although counsel had erred and summary judgments were filed unopposed against his clients. Counsel had a large backlog of cases, lost his secretary, and was involved in politics. The court found "neglect so gross that it is inexcusable." *Id.* at 978. The court found extraordinary circumstances existed because, absent such relief, there would be extreme and unexpected hardship. *Ibid.* Thus, the parties were not bound by their attorney's acts, and the motion to vacate was granted. *See Clive v. Hoogland,* 518 *F.*2d 776 (8th Cir.1975) (counsel's failure to oppose motion for summary judgment was mere carelessness and did not warrant relief from judgment under *Fed.R.Civ.P.* 60(b)).

In *Link v. Wabash R. Co.,* 370 *U.S.* 626, 82 *S.Ct.* 1386, 8 *L.Ed.* 2d 734 (1962), the Court upheld the dismissal with prejudice of a plaintiff's case for failure to prosecute. Although the Court did not reach the issue of whether such a dismissal could be vacated under *Fed.R.Civ.P.* 60(b)(6), it noted that clients are often bound by their counsel's inaction. 370 *U.S.* at 634, 82 *S.Ct.* at 1390, 8 *L.Ed.*2d at 740 n. 10. The proper remedy for serious attorney error, said the Court, was a malpractice action. *Ibid. But see L.P. Steuart, Inc. v. Matthews,* 329 *F.*2d 234 (D.C.Cir.), *cert.* den., 379 *U.S.* 824, 85 *S.Ct.* 50, 13 *L.Ed.*2d 35 (1964) (court allowed relief from judgment dismissing plaintiff's suit for failure to prosecute due to counsel's inexcusable and gross neglect).

There is no New Jersey case directly on point. In *Manning Eng'g, Inc., supra,* this Court allowed the reopening of a judgment under *R.* 4:50–1 to prevent a recovery of damages for breach of an illegal contract executed by plaintiff as part of a fraudulent scheme. Public policy considerations made this a truly exceptional circumstance. *Id.* at 124–25. Although attorney misconduct was involved in *Manning Eng'g, Inc.,* we did not decide whether counsel's conduct alone would have met subsection (f) requirements. *Ibid.* In a footnote, the Court recognized that the remedy for attorney error under subsection (f) is somewhat in conflict. *Manning Eng'g, Inc.,* 74 *N.J.* at 125 n. 5. Similarly, in *Hodgson, supra,* 31 *N.J.* at 41, the Court did not reach the question whether counsel's failure to seek appropriate appellate remedies would be a proper "reason" under subsection (f). We need not decide whether there may be cases in which an attorney's gross neglect constitutes such an exceptional circumstance as to invoke *R.* 4:50–1(f). This is not such a case.

## V

We conclude that the motion for a new trial under *R.* 4:49–1 was untimely, and that the time for filing cannot be extended regardless of extenuating circumstances.

We hold that defendant Nicholas Marinaro made a timely motion under *R.* 4:49–2 to vacate the judgment. As a matter of law, sufficient evidence was introduced to rebut the presumption of agency and, hence, we vacate the judgment against Nicholas Marinaro.

We hold that failure to make a timely motion under *R.* 4:49–1 does not automatically bar a party from seeking relief under *R.* 4:50–1; here defendants made a timely motion under *R.* 4:50–1. Nevertheless, defendants failed to establish that trial counsel's errors constituted excusable neglect under *R.* 4:50–1(a) or that the totality of circumstances constituted the type of exceptional circumstances necessary to invoke relief under *R.* 4:50–1(f).

We affirm the judgment of the Appellate Division against Kimberly but vacate the judgment against Nicholas Marinaro and remand to the trial court for the entry of judgment in his favor.

*For affirmance in part; reversal in part and remandment*— Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, O'HERN and GARIBALDI—6.

*Opposed*—None.