**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3779-22

HELEN FORD,

     Plaintiff-Appellant,

v.

RONALD P. EDWARDS,
individually and in his
official capacity, and the
COUNTY OF HUDSON,
a New Jersey municipal
corporation,

     Defendants-Respondents.

_____

Submitted October 23, 2024 – Decided January 29, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2652-21.

George J. Cotz, attorney for appellant.

Law Office of Michael A. D'Aquanni, LLC, attorneys for respondent Ronald P. Edwards (Michael A. D'Aquanni, of counsel and on the brief).

Chasen Lamparello Mallon & Cappuzzo, PC, attorneys for respondent County of Hudson (Cindy Nan Vogelman, of counsel and on the brief; Priscilla E. Savage, on the brief).

PER CURIAM

Plaintiff Helen Ford appeals from the following Law Division orders: two May 12, 2023 orders granting summary judgment to defendants Ronald P. Edwards and County of Hudson, respectively; the June 12, 2023 order denying her motion for reconsideration without prejudice; and the July 12, 2023 order denying her motions for reconsideration and for relief from judgment. We affirm.

The summary judgment record contains the following facts. Plaintiff was a senior lieutenant for defendant County of Hudson's Department of Corrections and Rehabilitation (DOC), at the Hudson County Jail. At fifty-nine years old, she was the oldest officer in the DOC and one of two African-American women holding superior rank.

Plaintiff worked for the DOC since 1990 and was promoted to lieutenant in October 2017. Also in 2017, Edwards was appointed director of the jail but retained his civil service rank of lieutenant.

On February 7, 2020, a captain, a sergeant and a corrections officer told plaintiff they witnessed an inmate being verbally abusive to Edwards and as

2

A-3779-22

punishment, Edwards ordered the inmate placed in a restraint chair. Four lieutenants, none of whom witnessed the incident, also reported it to plaintiff. Jail policy only permitted staff to use a restraint chair temporarily, when an inmate posed a threat to themselves or others, so plaintiff believed Edwards's punitive use of the restraint chair was unconstitutional as cruel and unusual punishment.

Later the same day, plaintiff emailed Edwards, jail administrators, supervisory officers and certain county officials, objecting to the alleged violation of the inmate's rights. She sent the email from her work computer using her official DOC email account, but believed the email was later deleted from the DOC server. Plaintiff claimed that after she voiced her objection of Edwards's conduct, he retaliated against her by:

> (1)    reassigning her responsibilities for outside agency inspections to a White male lieutenant;
>
> (2)    moving her office to "The Projects," which was his derogatory name for a group of "dilapidated, rodent-infested, unmaintained pre-fab temporary buildings" next to the jail;
>
> (3)    reassigning her office four times, and assigning offices to White male lieutenants with far less seniority than her;
>
> (4)    transferring her responsibility for the jail's gun locker keys to a younger, White lieutenant;

3

(5) changing her position from training officer to executive officer, which was primarily a clerical job;

(6) initiating an internal affairs (IA) investigation against her, which sought her termination, using documents with altered dates; and

(7) attempting to subvert her authority when she was the officer in charge by adopting "the habit of giving orders to other lieutenants and sergeants."

Plaintiff's four-count second amended complaint alleged: (1) Edwards retaliated against her for reporting his unconstitutional and illegal treatment of the inmate, contrary to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14; (2) Edwards's actions were motivated by racial, gender, and/or age-based discrimination and/or animosity, and he retaliated against her in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; (3) the County was liable for Edwards's actions under the LAD because plaintiff repeatedly reported his misconduct and retaliation, which the County failed to take meaningful action to stop, prevent or deter; and (4) the County was liable for Edwards's actions because the retaliation against jail employees was so widespread, common and accepted as to amount to an official policy. Plaintiff sought compensatory and punitive damages, injunctive relief, counsel fees and costs.

After both defendants answered the complaint and discovery was complete, a trial date was set for May 31, 2023. On April 12 and 14, 2023, the County and Edwards moved for summary judgment, respectively, with the motions returnable May 12, 2023. In support of his motion, Edwards provided four reports authored by outside counsel retained by the County to investigate plaintiff's prior complaints about Edwards, some of which formed the basis of her lawsuit.

Plaintiff failed to file timely opposition to the motions. Instead, six days after the opposition due date of May 2, 2023, her counsel filed a letter addressed to the trial judge and the civil presiding judge, requesting adjournments of the motions to May 26 and the trial to July 10.

On May 9, 2023, a clerk's notice was entered on the docket reflecting the trial was adjourned to October 24, 2023. The record does not indicate whether plaintiff's request to adjourn the motions was denied or overlooked. Plaintiff filed her opposition on May 16, 2023, which would have been timely for a May 26, 2023 return date, but not the May 12, 2023 return date.

On May 17, 2023, Judge Veronica Allende entered an order for each defendant granting summary judgment, along with one opinion addressing both

defendants' motions.[1] Judge Allende considered the summary judgment motions unopposed. In a ten-page opinion, she summarized plaintiff's allegations, deposition testimony and the investigation reports provided by Edwards.

Judge Allende noted plaintiff conceded during her deposition that the first five alleged acts of retaliation—reassigning her inspection responsibilities, moving her office out of the jail, reassigning her office again, transferring her responsibility for the gun locker keys, and changing her position from training officer to executive officer—"made no changes to her rank, seniority, compensation, working hours, or working conditions." Plaintiff further acknowledged the executive officer title was not a "diminished role" because it only involved a change in work responsibilities.

Plaintiff also admitted the IA investigation was instituted because she violated policy by sending an email containing confidential information, including recruits' social security numbers, to a retired corrections officer. The judge noted "[t]he decision to initiate disciplinary action against plaintiff was made by the County's legal department based upon a report and investigation

---

[1] Although plaintiff's appendix did not include the court's order regarding the County, Edwards provided it in the appendix to his merits brief. We presume the omission to be inadvertent and address the merits of her appeal of both orders.

6

conducted by outside counsel, as well as a subsequent investigation by [IA]." The record reflected the disciplinary hearing officer, not Edwards, decided to impose a thirty-five-day suspension.

Another investigative report found plaintiff's office move was necessitated by administrative logistical issues that arose when the jail lobby was reconfigured because of COVID-19. Plaintiff's unit had already been assigned to the modular buildings, "thus it was logical for [plaintiff] to be in an office near the officers she supervised." She and her team temporarily moved to the modular units for five weeks and then moved back to the jail.

Lastly, Edwards provided another report indicating he directly advised other officers to lock down the facility instead of advising plaintiff to give the order. The report stated Edwards needed to take immediate, emergent action without following chain-of-command protocols because a severe storm caused power outages at the jail. On another occasion, Edwards made the decision to lock down the jail and take over command during a protest.

After detailing the legal standards for summary judgment, outlining the elements necessary to establish CEPA and LAD claims, and "giving all reasonable inferences to plaintiff," Judge Allende concluded plaintiff failed to establish a prima facie claim of retaliation or discrimination because she

7

"suffered no adverse consequences from any of the alleged actions by defendant." Thus, defendants were entitled to summary judgment as a matter of law.

Plaintiff moved for reconsideration the next day. The motion was reassigned to Judge Susanne Lavelle, who denied it without prejudice based on plaintiff's failure to submit a courtesy copy of the motion to chambers. The June 12, 2023 order provides, "Should Movant refile this motion, [the] filing date of this motion will serve to preserve the time period required for filing for a motion for reconsideration." Three days later, plaintiff refiled the motion.

In her motion, plaintiff argued Judge Allende erred in "disregard[ing] the adjournment request" or, if she was unaware of it, "it was a mistake." Explaining why plaintiff's opposition was filed late, counsel conceded he had "assumed, carelessly," the motion had been adjourned along with the trial date. Plaintiff further maintained she had bona fide defenses to the summary judgment motion and reconsideration would not prejudice defendants.

Plaintiff also attached a signed, unsworn letter from Rene Felix, a lieutenant in the jail, stating, "In or about February 2020, I received an email from [plaintiff] about . . . Edwards['s] using a restraint chair to punish a prisoner. I do not recall precise details, but I do recall that it was critical of him. I am

certain that I received this email." Plaintiff also submitted her opposition to the summary judgment motion and attached a similar certification from Mario Fernandez, a sergeant in the jail. Both defendants opposed reconsideration.

Judge Lavelle denied the motion by order dated July 12, 2023, accompanied by a statement of reasons. She found the motion timely filed based on her prior order preserving the time period to file it but denied the motion because "plaintiff provided no legal argument in support . . . and merely mentioned [Rules] 4:49-2 and 4:50-1(f) in [her] notice of motion."

Noting a reconsideration motion is not an opportunity to supplement the record with material that could have been submitted before, Judge Lavelle found counsel could have obtained Felix's statement with "some due diligence." The judge deemed Felix's statement, if it were competent and admissible, nevertheless not relevant because Judge Allende's decision was not based on plaintiff's inability to produce the whistle-blowing email. She noted, "Judge Allende appeared to give . . . plaintiff the benefit of all reasonable inferences in her opinion" and, even though the summary judgment motion was unopposed, "addressed each and every allegation that plaintiff made of alleged retaliatory conduct." Judge Lavelle found plaintiff failed to demonstrate the decision "was

based upon a palpably incorrect or irrational basis" or "did not consider, or failed to appreciate the significance of probative, competent evidence."

Despite plaintiff's failure to justify reconsideration, the judge nevertheless reviewed plaintiff's opposition to summary judgment and considered her substantive arguments, as well as defendants' submissions in support of their motions. She found that she "would have come to the same conclusion substantively as Judge Allende did, after considering the requirements for a prima faci[e] CEPA claim and the proofs submitted on the motion for summary judgment."

In addition to denying the motion under Rule 4:49-2, the judge also analyzed and denied it under Rule 4:50-1(f), finding counsel's trial schedule and mistake regarding the adjournment did not constitute "exceptional circumstances" warranting relief from judgment.

On appeal, plaintiff argues the trial court abused its discretion in denying the motion for reconsideration, her opposition to the summary judgment motion raised meritorious issues, and she established a prima facie case of CEPA retaliation.[2]

---

[2] Defendants argue plaintiff waived her right to pursue an LAD claim under CEPA's waiver provision, N.J.S.A. 34:19-8. See Tartaglia v. UBS PaineWeber,

As a threshold matter, we address defendants' argument that plaintiff's second reconsideration motion, along with her appeal of the summary judgment order, were untimely. A motion for reconsideration must be filed within twenty days after service of the judgment on the parties. R. 4:49-2. Plaintiff first filed the motion for reconsideration on May 18, 2023, six days after the service of the order. Judge Lavelle's June 12, 2023 order "serve[d] to preserve the time period required for filing a motion for reconsideration." Thus, plaintiff had fourteen days remaining to refile the motion and did so the same day the order was entered, which was thirty-one days after service of the summary judgment order. However, Judge Lavelle did not "fault plaintiff for relying on the court's order and rule the plaintiff's motion was not timely filed when the court specifically addressed this issue in its order."

While the twenty-day limit for filing a motion for reconsideration may not be relaxed or enlarged, Rule 1:3-4(c), we discern no abuse of discretion in the judge's order preserving the time period for refiling. And because she

---

Inc., 197 N.J. 81, 103 (2008); Young v. Schering Corp., 275 N.J. Super. 221, 238 (App. Div. 1994). We need not reach this issue because on appeal, plaintiff does not argue her LAD retaliation claim should have survived summary judgment, and an issue not briefed is deemed waived. N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025).

determined the motion for reconsideration was timely refiled, it tolled the forty-five-day time for appeal of the summary judgment order.  See R. 2:4-1, -3(e).  Thus, plaintiff's August 9, 2023 notice of appeal, which was filed twenty-eight days after entry of the order on reconsideration, was timely for both the summary judgment and reconsideration orders.

Turning to the order on summary judgment, we begin our consideration with the applicable standard of review.  We review de novo a trial court's ruling on a motion for summary judgment, applying the same standard used by the trial court.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)).  We must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party[.]"  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  "To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact, the court must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Vell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The purpose of CEPA is "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private

sector employers from engaging in such conduct."  Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)).  "CEPA is a remedial statute that 'promotes a strong public policy of the State' and 'therefore should be construed liberally to effectuate its important social goal.'"  Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 555 (2013) (quoting Abbamont, 138 N.J. at 431).  CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).

To establish a prima facie case of retaliation under CEPA, a plaintiff must prove:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

14

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar, 177 N.J. at 462).]

An employee performs a whistle-blowing activity when the employee:

Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1)    is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care[.]

[N.J.S.A. 34:19-3(c).]

"If a plaintiff is able to establish [all four] elements, then the defendants must come forward and advance a legitimate, nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005). "If such reasons are proffered, plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

Here, we agree with Judge Allende's determination that plaintiff failed to establish a prima facie CEPA claim. Concerning the first and second elements, plaintiff did not produce the February 7, 2020 email to support her whistle-

15

blowing activity. Although "[t]he evidentiary burden at the prima facie stage is 'rather modest,'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)), plaintiff failed to meet that burden.

Even assuming plaintiff could prove she sent the email, she failed to establish she suffered any adverse employment action as a result. As Judge Allende found, plaintiff's change to a role as an executive officer did not change her rank, status as a lieutenant, salary or working hours. Plaintiff also testified:

> Q. And aside from the employee complaint form, what written documentation do you have to substantiate your claim that the change in your job title was somehow related to the February 7, 2020 e-mail?
>
> A. None.

Plaintiff similarly testified about her claim that the removal of her responsibility for holding the keys to the gun lockers constituted retaliation. Because plaintiff could not demonstrate an adverse employment action, her CEPA claim failed as a matter of law.

After the parties submitted their briefs, they submitted supplemental letter briefs pursuant to Rule 2:6-11(d)(1) addressing Muldrow v. City of St. Louis, 601 U.S. 346 (2024). The plaintiff in Muldrow alleged her transfer from a plainclothes investigation unit to a uniformed supervisory job violated Title VII:

16

While Muldrow's rank and pay remained the same in the new position, her responsibilities, perks, and schedule did not. Instead of working with high-ranking officials on the departmental priorities lodged in the Intelligence Division, Muldrow now supervised the day-to-day activities of neighborhood patrol officers. Her new duties included approving their arrests, reviewing their reports, and handling other administrative matters; she also did some patrol work herself. Because she no longer served in the Intelligence Division, she lost her FBI status and the car that came with it. And the change of jobs made Muldrow's workweek less regular. She had worked a traditional Monday-through-Friday week in the Intelligence Division. Now she was placed on a "rotating schedule" that often involved weekend shifts.

[601 U.S. at 351 (quoting Muldrow v. City of St. Louis, No. 18-CV-02150 (E.D. Mo. Sept. 11, 2020) (slip op. at 2)).]

The Supreme Court resolved the "Circuit split over whether an employee challenging a transfer under Title VII must meet a heightened threshold of harm—be it dubbed significant, serious, or something similar." Id. at 353. Because "the text of Title VII imposes no such requirement," ibid., a plaintiff must only show "some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so." Id. at 359.

We are unpersuaded Muldrow's holding impacts the outcome here for several reasons. First, Muldrow is not controlling because it concerns Title VII

cases, not CEPA claims. Even if it were, neither judge held plaintiff to a "heightened threshold of harm," rather, they both found plaintiff did not suffer any harm from the transfer. Moreover, even if plaintiff's change in job title from training officer to executive officer altered her work responsibilities to a more clerical function, she did not demonstrate a diminution of any perks, a less desirable schedule or any other harm that left her worse off.

We next turn to plaintiff's contentions regarding her motion for reconsideration. Reconsideration of a trial court's decision is permitted "if the aggrieved party 'state[s] with specificity the basis on which [the motion for reconsideration] is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'" Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (alterations in original) (quoting R. 4:49-2).

We review a trial judge's decision on whether to grant or deny a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 557, 582 (2021); see also Dennehy v. E. Windsor Reg'l Bd. of Educ., 469 N.J. Super. 357, 362-63 (App. Div. 2021) ("Our standard of review of an order denying reconsideration is deferential."), aff'd, 252 N.J. 201 (2022). "[T]he magnitude of the error cited must be a game-changer for

18

reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

We discern no abuse of discretion in the judge's denial, without prejudice, of plaintiff's first motion for reconsideration based on plaintiff's failure to comply with Rule 1:6-4, which requires the parties to submit copies of all motion papers to the court. And because we agree defendants were entitled to summary judgment, we find no error in Judge Lavelle's second order denying plaintiff's motion for reconsideration. Plaintiff's contention the judge erred by not considering her substantive arguments is belied by the record, because Judge Lavelle reviewed plaintiff's opposition to summary judgment and found it did not alter the outcome of the summary judgment motion.

The judge also considered plaintiff's reconsideration motion under Rule 4:50-1, which "provides for relief from a judgment in six enumerated circumstances." In re Est. of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006). Rule 4:50-1(f) is a catch-all provision allowing relief for "any other reason justifying relief from the operation of the judgment or order." "[T]he rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022) (quoting DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009)).

"Because of the importance that we attach to the finality of judgments, relief under Rule 4:50-1(f) is available only when 'truly exceptional circumstances are present.'" Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994) (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)). "However, '[b]ecause R[ule] 4:50-1(f) deals with exceptional circumstances, each case must be resolved on its own particular facts.'" Ibid. (first alteration in original) (quoting Baumann, 95 N.J. at 395).

We review a trial court's decision to set aside an order under Rule 4:50-1 for a clear abuse of discretion, guided by equitable principles. Hous. Auth. of Morristown, 135 N.J. at 283; see also US Bank Nat'l Ass'n v. Guillame, 209 N.J. 449, 467 (2012) (holding a trial court's decision under Rule 4:50-1 "warrants substantial deference"). An abuse of discretion arises when a decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

We have no basis to disturb the determination that counsel's trial schedule or mistake did not constitute exceptional circumstances warranting vacatur of the summary judgment order. And because Judge Lavelle considered plaintiff's

opposition to summary judgment and reached the same conclusion as Judge Allende, plaintiff could not justify relief from the order.

Lastly, we address plaintiff's argument the court erred by failing to address her hostile work environment claim, an issue that neither judge reached. The LAD prohibits employers from engaging in unlawful employment practice or discrimination by refusing to hire, discharging, or discriminating against individuals in "compensation or in terms, conditions or privileges of employment" based on the individual's protected status. N.J.S.A. 10:5-12(a).

To establish a prima facie claim for a hostile work environment under the LAD, a plaintiff must show "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 24 (2002) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).

Having reviewed the record, we are satisfied plaintiff failed to allege facts supporting a hostile work environment claim that could have survived summary judgment. While plaintiff has protected status under N.J.S.A. 10:5-12, her fourth cause of action (labeled "Fifth Count" in her amended complaint) alleges

21

"retaliation against [j]ail employees is so widespread, common and accepted within the government and institutions of Hudson County as to amount to an official policy."  Even broadly reading this count, it fails to allege the complained-of conduct would not have occurred but for her protected status, nor does it claim severe or pervasive conduct as to plaintiff.

Similarly deficient, plaintiff's certification in opposition to summary judgment conflated CEPA retaliation with LAD hostile work environment.[3] Plaintiff averred that the acts of retaliation "[c]umulatively[] . . . left [her] feeling convinced that [she] was working in a very hostile environment."  This assertion, even taken in the light most favorable to plaintiff, failed to satisfy any of the prongs necessary to establish a claim of hostile work environment.

To the extent we have not expressly addressed any issues raised by plaintiff, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] To the extent plaintiff sought to assert an LAD retaliation claim, it is precluded by CEPA's waiver provision.  See Tartaglia, 197 N.J. at 103; Young, 275 N.J. Super. at 238.

A-3779-22