639 A.2d 286

HOUSING AUTHORITY OF THE TOWN OF MORRISTOWN,
PLAINTIFF–RESPONDENT, v. CATHY LITTLE,
DEFENDANT–APPELLANT.

Argued November 8, 1993—Decided April 11, 1994.

*Gerald R. Brennan* argued the cause for appellant (*William F. Matrician*, Legal Director, Legal Aid Society of Morris County, attorney).

*Erica Sawyer* argued the cause for respondent (*Mandel, Berezin, Booker & Rodner,* attorneys; *Ernest R. Booker,* of counsel).

*David G. Sciarra,* Senior Attorney, argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Mr. Miller, Mr. Sciarra,* and *Cesar Torres,* Managing Attorney, on the brief).

*Claudette L. St. Romain* submitted a brief on behalf of *amicus curiae* Hudson County Legal Services Corp. (*Timothy K. Madden,* Director, attorney).

The opinion of the Court was delivered by

STEIN, Justice.

The issue presented by this appeal is whether *N.J.S.A.* 2A:42–10.6 of the Tenant Hardship Act, which grants courts the power to stay an eviction up to a maximum of six months, restricts a court's power to vacate a judgment for possession on equitable grounds pursuant to *Rule* 4:50–1.

The Housing Authority of the Town of Morristown (Authority) instituted a summary dispossess action against a tenant, Cathy Little. The trial court entered a default judgment for possession in favor of the Authority based on nonpayment of rent. See *N.J.S.A.* 2A:18–61.1.a. The court also issued a warrant of removal. See *N.J.S.A.* 2A:18–57. After the warrant had been executed and Little had been evicted, the court issued a stay of the warrant and allowed Little to return to her apartment. The court then vacated the judgment pursuant to *Rule* 4:50–1 on Little's payment of the back rent in full to the Authority. The Appellate Division reversed, holding that the Tenant Hardship Act (Act), *L.* 1957, *c.* 110, limited a court's authority to vacate a judgment for possession, and that the facts did not justify the application of *Rule* 4:50. 263 *N.J.Super.* 368, 622 *A.2d* 1343 (1993). We granted certification, 134 *N.J.* 476, 634 *A.2d* 523 (1993), and now reverse.

I

Defendant, Cathy Little, rents an apartment from the Authority, a public-housing agency created pursuant to *N.J.S.A.* 55:14A–1. She lives with her five minor children and receives both food stamps and benefits under the Aid to Families with Dependent Children (AFDC) program. The rent for the apartment is $125 per month. In April 1992 the Authority filed a complaint for summary dispossess alleging nonpayment of rent as the sole basis for relief. When the complaint was filed, Little was one month behind in her rent. On the return date of the complaint, Little failed to appear and the Authority obtained a default judgment for possession. See *R.* 6:6–3(b). The Authority filed a request for a warrant of removal. Little obtained an order to show cause temporarily staying the execution of the warrant. Because she had been out of town trying to collect the money for the rent, Little arrived late to court on the return date of the order. The court had already vacated the stay by the time Little arrived at the designated courtroom. The warrant was executed immediately thereafter. The Authority locked Little and her children out of their apartment that afternoon. That same day Little offered the Authority $150 toward her arrears and promised to pay the balance the following Monday, June 22. The Authority refused her offer.

At the suggestion of the court, Little obtained counsel through the Legal Aid Society of Morris County. On June 22 she obtained a second order to show cause returnable June 26, requesting that the judgment for possession be vacated and that she be permitted to move back in to her apartment. The court permitted Little to re-enter her apartment pending the hearing on her application. That same day Little offered the Authority all of the rent money owed, but the Authority again refused to accept the back rent.

At the June 26 hearing, the Authority explained that it had refused Little's tender of rent because it did not wish to continue her tenancy. During oral argument, the Authority's counsel claimed that Little had been the source of many complaints and

that her apartment had been the site of "drug activities." The court declined to credit the Authority's allegations, noting that the current proceeding was for nonpayment of rent only, and that other statutory grounds for eviction were available to the Authority. The court vacated the judgment for possession on payment by Little of the full amount of rent due, basing its decision on the equitable grounds included in *Rule* 4:50-1, and setting forth the considerations on which it had relied: the presence of five minor children, the unavailability of suitable housing at the same rent, and the fact that public housing was involved.

The Authority appealed the trial court's order to the Appellate Division. Reversing, the Appellate Division determined that a court's power to vacate a judgment for possession in a summary-dispossess proceeding based on nonpayment of rent is foreclosed by the Tenant Hardship Act, which limits the relief available to a stay of the execution of a warrant of removal for up to six months. 263 *N.J.Super.* at 369–70, 622 *A.2d* 1343 (citing *N.J.S.A.* 2A:42-10.6). The Appellate Division held that a tenant cannot avoid a judgment for possession for nonpayment of rent by paying rent after that judgment has been entered, observing that the trial court's action in vacating the judgment for possession exceeded the limits of judicial discretion authorized by the Legislature under *N.J.S.A.* 2A:42-10.6. *Id.* at 370–71, 622 *A.2d* 1343. The Appellate Division opinion relied heavily on this Court's decision in *Housing Authority v. West,* 69 *N.J.* 293, 354 *A.2d* 65 (1976), in which we reversed a trial court's order granting a tenant a twenty-two-month hardship stay designed to enable her to pay back to the landlord the total amount of rent due. There, we found that the trial court's order had unlawfully exceeded the six-month limit imposed by *N.J.S.A.* 2A:42-10.6. 69 *N.J.* at 300–01, 354 *A.2d* 65.

The Appellate Division noted, however, that under certain circumstances a court could grant relief from a judgment for possession under *Rule* 4:50-1. It concluded that defendant had not met the criteria for application of *Rule* 4:50-1 because the sole basis for the trial court's grant of relief was Little's payment of the

accrued rent. 263 *N.J.Super.* at 372, 622 *A.*2d 1343. After petitioning for certification, Little applied for and was granted a stay of eviction by the Appellate Division, effective until final disposition by this Court.

## II

### A

The summary-dispossess statute was enacted in 1847. *P.L.* 1847, p. 142. The purpose of the statute was to afford landlords an expedited procedure to regain possession of leased premises, thereby avoiding the delays ordinarily associated with common-law ejectment actions. *West, supra,* 69 *N.J.* at 300, 354 *A.*2d 65; *Vineland Shopping Ctr., Inc. v. De Marco,* 35 *N.J.* 459, 462, 173 *A.*2d 270 (1961). The only remedy that can be granted in a summary-dispossess proceeding is possession; no money damages may be awarded. *Ortiz v. Engelbrecht,* 61 *F.R.D.* 381, 389 (D.N.J. 1973); 23A *New Jersey Practice, Landlord and Tenant Law* § 4311, at 299 (Sharon Rivenson Mark & Raymond I. Korona) (4th ed. 1990). Prior to the abolition of the County District Courts by the Legislature in 1983, *L.* 1983, *c.* 405, § 1, and the transfer of summary actions for possession to the Special Civil Part, see *Rule* 6:1–2(a)(3), the summary-dispossess statute barred appellate review, affording finality to the trial court's judgment for possession, except that judgments could be appealed on the ground that the court lacked jurisdiction because the plaintiff had failed to prove any of the statutory grounds. *N.J.S.A.* 2A:18–59; *Vineland, supra,* 35 *N.J.* at 462–63, 173 *A.*2d 270; *Academy Spires, Inc. v. Jones,* 108 *N.J.Super.* 395, 399, 261 *A.*2d 413 (Law Div.1970). However, because the Special Civil Part is a division of the Superior Court, appeals are protected from statutory restrictions by the *New Jersey Constitution* article VI, section 5, paragraph 2, and are available as of right from a final judgment in a summary-dispossess action. *See R.* 2:2–3(a); *Township of Bloomfield v. Rosanna's Figure Salon, Inc.,* 253 *N.J.Super.* 551, 557–58, 602 *A.*2d 751 (App.Div.1992).

The summary-dispossess procedure also was designed to secure performance of the rental obligation in actions based on nonpayment of rent. *Vineland, supra,* 35 *N.J.* at 469, 173 *A.2d* 270. Notably, if the rent owed is paid on or before final judgment in a proceeding based on nonpayment of rent, the landlord can no longer pursue the summary remedy. *N.J.S.A.* 2A:18–55; *Vineland, supra,* 35 *N.J.* at 469, 173 *A.2d* 270.

■ Unlike the common-law ejectment action, which existed prior to enactment of the summary-dispossess statute and remains available to aggrieved landlords, the jurisdiction of the court in summary-dispossess proceedings is entirely statutory. *Ortiz, supra,* 61 *F.R.D.* at 390; *C.F. Seabrook Co. v. Beck,* 174 *N.J.Super.* 577, 589, 417 *A.2d* 89 (App.Div.1980); see *N.J.S.A.* 2A:18–53 to –60. *N.J.S.A.* 2A:18–61.1 limits the grounds for which residential tenants may be evicted in a summary proceeding, and jurisdiction to grant the remedy requires a showing that one of the statutory grounds for eviction exists. *Levine v. Seidel,* 128 *N.J.Super.* 225, 229, 319 *A.2d* 747 (App.Div.1974). Those grounds include nonpayment of rent, disorderly conduct, habitual late payment of rent, and destruction of the premises. *N.J.S.A.* 2A:18–61.1.a to .1.c, .1.j.

A summary judgment for possession is enforced by a warrant of removal that cannot issue until three days after the entry of the judgment for possession. See *N.J.S.A.* 2A:18–57. The warrant of removal, in turn, cannot be executed until three days after its issuance. See *ibid.; N.J.S.A.* 2A:42–10.16. The Special Civil Part has jurisdiction to hear applications for "lawful relief" for up to ten days after the warrant of removal has been executed. See *N.J.S.A.* 2A:42–10.16. A form of relief frequently granted by the courts is a hardship stay of eviction. The courts' statutory power to grant that relief derives from the Tenant Hardship Act, which authorizes the court having jurisdiction in the matter to stay the issuance of a warrant for up to six months if "it shall appear that by the issuance of the warrant or writ the tenant will suffer hardship because of the unavailability of other dwelling accommodations * * *." *N.J.S.A.* 2A:42–10.6. A court may not issue or

continue a stay if: (1) all rent arrearages plus court costs and current rent have not been paid; (2) the tenant is disorderly; (3) the tenant willfully damages the premises; or (4) the tenant fails to pay future rent as it becomes due. *N.J.S.A.* 2A:42–10.6.

Therefore, the Act enables courts to grant discretionary relief to tenants facing eviction, *Academy Spires, supra,* 108 *N.J.Super.* at 402, 261 *A.*2d 413, while limiting the conditions under which courts may provide such relief. *See West, supra,* 69 *N.J.* at 300–01, 354 *A.*2d 65 (holding that order staying issuance of warrant of removal pending tenant's payment of arrearages over twenty-two months exceeded limits imposed by statute as well as court's jurisdiction); *Ivy Hill Park Section Five, Inc. v. Handa,* 121 *N.J.Super.* 366, 297 *A.*2d 201 (App.Div.1972) (holding that court may not grant stay unless conditioned on payment of back and future rent); *Spruce Park Apartments v. Beckett,* 230 *N.J.Super.* 311, 317, 553 *A.*2d 395 (Law Div.1988) (noting that defendant "may apply for a hardship stay, provided that all statutory requirements therefore have been, or will be, satisfied"). The Tenant Hardship Act has allowed trial courts, within the limits of the statute, to mitigate the harsh nature of the summary-dispossess procedure by postponing for a limited time the execution of a warrant of removal if the eviction presents a hardship to the tenant. *See West, supra,* 69 *N.J.* at 300–01, 354 *A.*2d 65 (finding that court has discretion "to stay the warrant for a reasonable time to permit a tenant in distressed circumstances to arrange for his voluntary removal from the premises"); *Metpark, Inc. v. Kensharper,* 206 *N.J.Super.* 151, 159, 501 *A.*2d 1068 (Law Div.1985) (granting additional stay of three months to mobile-home trailer-park residents to enable them to find purchaser).

## B

The trial court granted relief to Little by vacating the judgment for possession on equitable grounds, pursuant to *Rule* 4:50–1, which is made applicable to the Special Civil Part by *Rule* 6:6–1. *Rule* 4:50–1 provides in part:

On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: *(a) mistake, inadvertence, surprise, or excusable neglect;* (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial * * *; (c) fraud * * *, misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; *(e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.*

[Emphasis added.]

■ A motion under *Rule* 4:50–1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied. *Hodgson v. Applegate,* 31 *N.J.* 29, 37, 155 *A.*2d 97 (1959); *Shammas v. Shammas,* 9 *N.J.* 321, 328, 88 *A.*2d 204 (1952). The decision granting or denying an application to open a judgment will be. left undisturbed unless it represents a clear abuse of discretion. *Mancini v. EDS,* 132 *N.J.* 330, 334, 625 *A.*2d 484 (1993); *Court Inv. Co. v. Perillo,* 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966); *Hodgson, supra,* 31 *N.J.* at 37, 155 *A.*2d 97; Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:50–1 (1993).

Although the trial court did not identify the specific subsections of *Rule* 4:50–1 on which it relied, the record includes facts that invite consideration of the grounds for relief set forth in *Rule* 4:50–1(e) and (f). Moreover, we gain insight concerning the general criteria governing application of *Rule* 4:50–1 by examining cases decided under subsection (a), which includes "mistake" and "excusable neglect" as grounds for relief from a judgment.

■ Courts have applied subsection (a) adaptively when advanced as the basis for setting aside a default judgment. *See Marder v. Realty Constr. Co.,* 84 *N.J.Super.* 313, 318–19, 202 *A.*2d 175 (App.Div.) (affirming vacation of default judgment as within trial court's discretion and stating "[T]he opening of default judgments should be viewed with great liberality, and every reasonable

ground for indulgence is tolerated to the end that a just result is reached"), *aff'd*, 43 *N.J.* 508, 205 *A.2d* 744 (1964). Generally, a defendant seeking to reopen a default judgment because of excusable neglect must show that the failure to answer was excusable under the circumstances and that a meritorious defense is available. *See Mancini, supra,* 132 *N.J.* at 334–35, 625 *A.2d* 484 (holding that neglect by defendant to respond to claims, notices, and complaints was inexcusable because defendant was in business of processing claims); *Morales v. Santiago,* 217 *N.J.Super.* 496, 501, 504, 526 *A.2d* 266 (App.Div.1987) (holding that defendants were entitled to vacation of default judgment because of excusable neglect or in interest of justice); *Marder, supra,* 84 *N.J.Super.* at 318, 202 *A.2d* 175 (holding that neglect to answer complaint was excusable where defendant had not received notice from insurance carrier that claim was not covered under policy until after time for answering had elapsed and that defense was meritorious where acts complained of arguably did not constitute basis for judgment). Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence and reasonable prudence. *See Tradesmens Nat'l Bank & Trust Co. v. Cummings,* 38 *N.J.Super.* 1, 4–5, 118 *A.2d* 80 (App.Div.1955) (holding that trial court did not abuse its discretion in vacating default judgment on basis of excusable neglect where defendant who was seventy-seven years old and emotionally upset due to death of his wife carelessly failed to respond to complaint); *see also Baumann v. Marinaro,* 95 *N.J.* 380, 394, 471 *A.2d* 395 (1984) (observing that in certain cases carelessness may be excusable, but where trial counsel's errors were not due to honest mistake, accident, or conduct compatible with proper diligence, carelessness did not constitute excusable neglect). Furthermore, doubt should be resolved in favor of the party seeking relief. *Mancini, supra,* 132 *N.J.* at 334, 625 *A.2d* 484; *see also Arrow Mfg. Co. v. Levinson,* 231 *N.J.Super.* 527, 533–34, 555 *A.2d* 1165 (App.Div.1989) (finding excusable defendant's failure to respond to demand notice requesting information pursuant to *N.J.S.A.* 2A:17–74 because demand notice received by defendant had been addressed to corporation of

which he was stockholder and officer, and contained technical language; furthermore, defendant had demonstrated willingness to supply information to plaintiff as required in connection with legal proceedings).

*Rule* 4:50–1(e) grants a court the discretion to relieve a party from a final judgment or order if that party can show that "it is no longer equitable that the judgment or order should have prospective application[.]" New Jersey courts have rarely relied on subsection (e) in providing relief under *Rule* 4:50–1. See *Stanger v. Ridgeway*, 171 *N.J.Super.* 466, 410 *A.*2d 59 (App.Div.1979) (applying *Rule* 4:50–1(e)). However, because *Rule* 4:50–1 was patterned after *Federal Rule of Civil Procedure* 60(b), we may anticipate the potential application of subsection (e) by " 'draw[ing] on the experience of the federal courts with that rule * * *.' " *Baumann, supra*, 95 *N.J.* at 392, 471 *A.*2d 395 (quoting *Hodgson, supra*, 31 *N.J.* at 35, 155 *A.*2d 97).

■ In addressing the scope of subsections (5) and (6) of *Rule* 60(b) (the federal equivalents of subsections (e) and (f) of *Rule* 4:50–1, respectively), the Third Circuit has observed that the broad language of either provision does not "present[ ] the court with a 'standardless residual discretionary power to set aside judgments * * *.' " See *Mayberry v. Maroney*, 558 *F.*2d 1159, 1163 (1977) (quoting *Mayberry v. Maroney*, 529 *F.*2d 332, 337 (1976) (Gibbons, J., concurring)); *see also Moolenaar v. Government of V.I.*, 822 *F.*2d 1342, 1346 (3d Cir.1987) (quoting *Mayberry, supra*, 558 *F.*2d at 1163). Thus, a motion to vacate or modify a judgment on the ground that it is no longer equitable that the judgment should have prospective application must be supported by evidence of changed circumstances. *United States v. Swift & Co.*, 286 *U.S.* 106, 114–15, 52 *S.Ct.* 460, 462, 76 *L.Ed.* 999, 1005–06 (1932); *Mayberry, supra*, 558 *F.*2d at 1163; *SEC v. Hatch*, 128 *F.R.D.* 58, 61 (D.N.J.1989). The party seeking relief bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in "extreme" and "unexpected" hardship. *Mayberry, supra*, 558

*F.*2d at 1163 (citing *Swift, supra,* 286 *U.S.* at 119, 52 *S.Ct.* at 464, 76 *L.Ed.* at 1008). That burden is imposed in order to overcome the courts' interests in orderly procedures and the finality of judgments. *Ibid.; In re F.A. Potts & Co.,* 86 *B.R.* 853, 858 (E.D.Pa.), *aff'd,* 93 *B.R.* 62 (E.D.Pa.1988), *aff'd,* 891 *F.*2d 280 (3d Cir.), *and aff'd sub nom. Appeal of Pagnotti Enters., Inc.,* 891 *F.*2d 282 (3d Cir.1989).

█ This Court has addressed the application of *Rule* 4:50–1(f) on several occasions. In *Court Investment Co., supra,* 48 *N.J.* 334, 225 *A.*2d 352, we noted that

[n]o categorization can be made of the situations which would warrant redress under subsection (f). * * * [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.

[*Id.* at 341, 225 *A.*2d 352.]

*See Baumann, supra,* 95 *N.J.* at 395, 471 *A.*2d 395; *Manning Eng'g, Inc. v. Hudson County Park Comm'n,* 74 *N.J.* 113, 122, 376 *A.*2d 1194 (1977) ("We have repeatedly noted the broad parameters of a court's discretion under subsection (f), and that a court should have authority under it to reopen a judgment where such relief is necessary to achieve a fair and just result."); *Hodgson, supra,* 31 *N.J.* at 41, 155 A.2d 97. Because of the importance that we attach to the finality of judgments, relief under *Rule* 4:50–1(f) is available only when "truly exceptional circumstances are present." *Baumann, supra,* 95 *N.J.* at 395, 471 *A.*2d 395. However, "[b]ecause *R.* 4:50–1(f) deals with exceptional circumstances, each case must be resolved on its own particular facts." *Ibid.; see Manning Eng'g, supra,* 74 *N.J.* at 123–25, 376 *A.*2d 1194 (finding reopening of judgment under *Rule* 4:50–1(f) warranted because of public policy to prevent recovery of damages for breach of illegal public contract); *Court Inv. Co., supra,* 48 *N.J.* at 344–47, 225 *A.*2d 352 (granting relief under *Rule* 4:50–1(f) where defendant's attorney in mortgage-foreclosure suit was subject to disciplinary proceedings that led to disbarment at time he falsely assured

defendants that suit had been taken care of but default judgment was entered against them).

Some courts have applied *Rule* 4:50–1 in actions for summary dispossess. In *Stanger, supra,* 171 *N.J.Super.* 466, 410 *A.*2d 59, the landlord obtained a judgment for possession against a residential tenant on the ground of nonpayment of rent. The tenant had withheld rent, claiming that his home had become uninhabitable. On the date of trial, when the court directed entry of the judgment in favor of the landlord, the tenant asked for confirmation from the court that the case would be dismissed if the money owed were paid before the warrant of removal was issued. The trial court agreed and the landlord's attorney did not object. The tenant paid the back rent and costs to the landlord's attorney three days later, on the first day that the warrant lawfully could have been issued. However, because the warrant had been issued in error only two days after the judgment had been entered, the tenant was served with the warrant the day after payment. *Id.* at 468–69, 410 *A.*2d 59. The tenant applied for an injunction against the execution of the warrant of removal, and the court held that the judgment for possession would be vacated because of the tenant's payment of back rent. The landlord appealed, claiming that the tenant was not statutorily entitled to a vacation of the judgment because the payment had not been made before the judgment for possession had been entered. *See N.J.S.A.* 2A:18–55. The Appellate Division agreed that *N.J.S.A.* 2A:18–55 required payment before or on the day judgment was entered in order to nullify a judgment for possession for nonpayment of rent. The Appellate Division, however, upheld the trial court's use of *Rule* 4:50–1, finding that "to allow plaintiff to evict defendant under the circumstances * * * would be a perversion of justice," and noting that because the landlord's attorney did not object at the hearing to the timing of the payment, the landlord should be estopped from challenging the timeliness of the payment. 171 *N.J.Super.* at 473–74, 410 *A.*2d 59. The Appellate Division also found that the court retained the equitable power to terminate the proceedings after entry of judgment under *Rule* 4:50–1(e), stating

that "it is no longer equitable that the judgment or order should have prospective application." *Id.* at 474, 410 *A.*2d 59.

In *Olympic Industrial Park v. P.L., Inc.*, 208 *N.J.Super.* 577, 506 *A.*2d 770, *certif. denied,* 104 *N.J.* 453, 517 *A.*2d 440 (1986), the Appellate Division also upheld the use of *Rule* 4:50-1 in a nonpayment case, although in the context of a commercial tenancy. In *Olympic,* the landlord obtained a default judgment for possession, claiming that the tenant had not paid rent for the last two months. In fact, the tenant was late in paying only the current month's rent, and, in addition, the tenant had received assurances that, as in the past, the late rent would be accepted if accompanied by a payment of the late charge. The corporate tenant was not present at trial because the sole owner and president was in Italy. On learning that the landlord was proceeding with the summary-dispossess action, the owner left Italy immediately, in order to pay the overdue rent at the earliest possible moment. The tenant made full payment within twenty-four hours after entry of judgment and moved to vacate the judgment pursuant to *Rule* 4:50-1. The trial court denied the motion, but the Appellate Division reversed, holding that the trial court had erred in not exercising its discretionary power to grant the motion. 208 *N.J.Super.* at 582, 506 *A.*2d 770. The court vacated the judgment under *Rule* 4:50-1, finding excusable neglect and that "the equities * * * all favor defendant." *Id.* at 581-82, 506 *A.*2d 770. The Appellate Division explained that the dispossess statute was not the exclusive source of the trial court's power, noting that "[t]here is no statutory authority impinging on the court's inherent right, as implemented by rule of court, to grant relief from its own judgments." *Id.* at 582, 506 *A.*2d 770; see also 23A *New Jersey Practice, Landlord and Tenant Law, supra,* § 4113, at 216 (stating that party may be relieved from final judgment in summary-dispossess proceeding under *Rule* 4:50-1); Mahlon L. Fast, *A Guide to Landlord/Tenant Actions in the Special Civil Part of the Superior Court of New Jersey* 10.1, 10.2 (1992) (stating that Special Civil Part has jurisdiction to hear motions to vacate under

*Rule* 4:50–1 for ten days after warrant of removal has been executed).

### III

We entertain no doubt that a court's limited power to grant a stay under the Act is entirely consistent with a court's residual power to vacate a judgment pursuant to *Rule* 4:50–1. We note the important distinction that exists between the statutory stay and a court's discretionary power to vacate a judgment. A stay is a provisional remedy that delays the award of a permanent remedy even though the substantive rights of the parties have not changed. In the case of a summary-dispossess action, the landlord's right to possession remains undisturbed and the execution of the judgment is merely postponed. In contrast, a court typically vacates a judgment because events have arisen to alter the substantive rights of the parties or because the relief granted did not adequately take into account the prevailing equities. *See Manning Eng'g, supra,* 74 *N.J.* at 123–25, 376 *A.2d* 1194; *Stanger, supra,* 171 *N.J.Super.* at 474, 410 *A.2d* 59.

Courts should use *Rule* 4:50–1 sparingly, in exceptional situations; the *Rule* is designed to provide relief from judgments in situations in which, were it not applied, a grave injustice would occur. The broad reach of the *Rule* is designed to encompass a limitless variety of factual situations, including judgments arising from summary-dispossess proceedings. We note that in *Stanger* and *Olympic, Rule* 4:50–1 appropriately provided relief from judgments in summary-dispossess actions for nonpayment of rent.

We have found no evidence that demonstrates that the Legislature, in enacting the Act, intended to limit the ability of a court to vacate a judgment for possession for good cause. To the contrary, a statement of the Senate County and Municipal Government Committee, accompanying a 1979 amendment to *N.J.S.A.* 2A:42–10.17 that limited a court's power to grant a stay of a warrant of

removal for a residential seasonal tenant, acknowledges a court's residual power to vacate judgments. That statement noted that the amendment "would not affect the discretion of a court with respect to entry of a judgment or to reopening a judgment. A court could still reopen a judgment and thereby withdraw a warrant from the judgment previously entered, if it finds cause." Senate County and Municipal Government Committee Statement to Assembly, No. 3591, at 1 (1979). The committee statement suggests that the Legislature perceived no conflict between a court's statutory power to issue a stay of eviction and a court's discretion to vacate a judgment for possession.

 We conclude that the trial court had the authority to invoke *Rule* 4:50–1 to vacate a judgment for possession in a summary-dispossess action after a warrant of removal had been executed. The Appellate Division determined, however, that even if the court had the power to invoke *Rule* 4:50–1 after a warrant of removal had been executed, the equities did not support the result granted by the trial court. We disagree. We need not attempt to define the outer limits of the use of *Rule* 4:50–1(f) in summary-dispossess actions for nonpayment of rent. As noted, *supra* at 286, 639 A.2d at 292 although relief under subsection (f) of the *Rule* is available only in "exceptional circumstances," *Baumann, supra,* 95 *N.J.* at 395, 471 A.2d 395, its boundaries " 'are as expansive as the need to achieve equity and justice.' " *Palko v. Palko,* 73 *N.J.* 395, 398, 375 A.2d 625 (1977) (quoting *Court Inv. Co., supra,* 48 *N.J.* at 341, 225 A.2d 352); *accord Mancini, supra,* 132 *N.J.* at 336, 625 A.2d 484. The discretion afforded to a trial court under the *Rule* also includes the duty to consider evidence in the record that militates against the grant of relief, including evidence that a tenant's past payment record has been erratic, or that the tenant has been disorderly or has damaged the premises. See *N.J.S.A.* 2A:18–61.1.b and c. No such evidence was adduced before the trial court.

Focusing on the record before us, we note that the trial court considered that Little, within three days after execution of the warrant of removal, had been able to pay to the Authority the entire amount of rent due. The court also considered that five minor children lived in the apartment and that suitable housing was not readily available at the same monthly rental. Another factor that may have affected the court's exercise of discretion was that the Authority, a publicly-subsidized provider of housing of last resort, is subject to public-policy responsibilities not generally imposed on private landlords. *See N.J.S.A.* 40A:12A–19b(1) (requiring housing authorities to rent "only to persons of low and moderate income and at rentals within the financial reach of such persons"); *N.J.S.A.* 55:14A–3(j) (defining persons of low income to mean "persons or families who are in the lowest income group and who cannot afford to pay enough to * * * live in [private] dwellings, without overcrowding"); 42 *U.S.C.A.* §§ 1437a to 1437w (establishing requirements for operation and maintenance of public housing by public-housing authorities); *West, supra,* 69 *N.J.* at 312, 354 *A.2d* 65 (Pashman, J., dissenting) ("Housing authorities must fulfill the dual roles of landlord and governmental anti-poverty agency; private landlords need only fulfill the former."). Significantly, the Legislature has specifically authorized public-housing authorities to "provide emergency shelters, transitional housing and supporting services to homeless families and individuals." *N.J.S.A.* 40A:12A–16a(11).

We note that the Legislature enacted the Prevention of Homelessness Act of 1984, *L.* 1984, *c.* 180 (codified at *N.J.S.A.* 52:27D–280 to –287), in recognition of the fact that "[i]t is both more economical and more socially desirable to * * * enable people to retain possession of their houses or apartments * * * than to house them in hotel rooms or in other facilities intended for short-term occupancy." *N.J.S.A.* 52:27D–281c. That act authorized the Department of Community Affairs to administer the Homeless-

ness Prevention Program (HPP), which provides temporary assistance to families who are in danger of becoming homeless "because they are without adequate funds for reasons beyond their control." *N.J.A.C.* 5:12–1.1(b). Among other forms of assistance, the HPP provides for payment of up to three months' rental arrears to prevent imminent eviction for nonpayment of rent. *N.J.A.C.* 5:12–2.1(a), –2.3(a), –2.4(b). Assistance under the HPP is strictly temporary and is not available to families who will not be able to pay their shelter costs after the period of assistance has ended. *N.J.A.C.* 5:12–2.1(g), –2.4(b)–(c). Furthermore, in the event of a shortage of funds, priority for assistance is to be given to several categories of persons, including "[h]ouseholds with children [that] * * * face imminent breakup due to homelessness" and "[s]ingle parent households." *N.J.A.C.* 5:12–2.5(a)4, (a)5. Preference is also to be given to "households already in sustainable housing." *N.J.A.C.* 5:12–2.5(b). The Emergency Assistance Program (EA), the HPP equivalent for families receiving public assistance, echoes the goals of the Prevention of Homelessness Act. The EA regulations for AFDC recipients state that "[t]he goal of the EA shelter/housing program is to prevent homelessness * * *." *N.J.A.C.* 10:82–5.10(b). To that end, the EA regulations authorize payment of up to three months of back rent to prevent eviction whenever there "is documentation of a pending eviction * * *." *N.J.A.C.* 10:82–5.10(d)2.

Because Little receives AFDC benefits, she and her family apparently would have been eligible for EA benefits had they become homeless through eviction by the Housing Authority. *See N.J.A.C.* 10:82–5.10(a), (d)2. The Authority's effort to evict Little and her family presents the likelihood that two governmental agencies, both charged with assuring that low-income families are housed in suitable, affordable housing, would be working at cross-purposes: On the one hand, the Authority is attempting to evict a low-income tenant who, although able to pay her arrears, could not do so within the statutory time limit; on the other hand, in the event Little and her family were to become homeless, the county welfare agency administering the EA program for AFDC recipi-

ents in Morristown would be responsible for providing temporary housing for Little and her family and for assisting Little to secure affordable and suitable permanent housing. *N.J.A.C.* 10:82–5.10(e)2.

In the past, our courts have been responsive to the Legislature's goals in enacting statutes to aid the homeless, seeking to implement such legislation and to avoid the consequences of regulatory practices that impede the statutory objectives. *See L.T. v. New Jersey Dep't of Human Servs.*, 134 *N.J.* 304, 321–25, 633 *A.*2d 964 (1993); *Maticka v. City of Atlantic City*, 216 *N.J.Super.* 434, 452–54, 524 *A.*2d 416 (App.Div.1987). Consistent with those rulings, the trial court's exercise of discretion to vacate the judgment evicting Little reflected a pragmatic recognition that the State's homelessness-prevention policies would be disserved by the eviction of a tenant in public housing who had demonstrated satisfactorily her ability to fulfill her rental obligations. We are satisfied that the trial court did not abuse its discretion in vacating the judgment for possession.

Our concurring colleagues agree that potential homelessness is a factor appropriately to be considered by a trial court in exercising discretion under *Rule* 4:50–1, *post* at 295, 639 *A.*2d at 296, but insist that factor is entitled to as much weight in respect of tenants of private landlords as it is of tenants of housing authorities. We need not either contest or concede the point. To the extent that a distinction can be justified, however, we note that housing authorities, as distinguished from private landlords, are entrusted by the Legislature with the specific power to provide emergency shelters, transitional housing and support services to the homeless. *N.J.S.A.* 40A:12A–16a(11). In that context, one would expect a court's discretionary authority under *Rule* 4:50–1 to be exercised somewhat more freely when the evicting landlord is a public body charged with serving only low-income tenants and authorized by the Legislature to provide assistance to homeless families.

The nature of the exceptional relief afforded by *Rule* 4:50–1(f) requires courts to focus on equitable considerations in determining whether the specific circumstances warrant the unique remedy authorized by the *Rule*. Application of that subsection of the *Rule* to summary-dispossess proceedings is appropriate only in exceptional circumstances, and requires a trial court to weigh carefully all relevant evidence in determining whether the specific grounds advanced to support relief under the *Rule* are sufficient to override the strong countervailing interest favoring finality of judgments. We anticipate that the availability of relief under the *Rule* in summary-dispossess proceedings will be circumscribed, and that the reservoir of discretion afforded by the *Rule* will be exercised only in those circumstances in which the court's intervention is required to avoid an unjust result.

The judgment of the Appellate Division is reversed.

GARIBALDI, J., concurring.

I agree with the Court's holding today that *N.J.S.A.* 2A:42–10.6 of the Tenant Hardship Act, which grants courts the power to stay an eviction up to a maximum of six months, does not preclude a court from vacating a judgment of possession on equitable grounds pursuant to *Rule* 4:50–1. Likewise, I agree with the Court, and emphasize here, that vacating a judgment of possession on equitable grounds pursuant to *Rule* 4:50–1 is an extraordinary remedy to be used sparingly and only under truly exceptional situations. *Ante* at 289, 639 *A.*2d at 293.

My narrow disagreement with the majority stems from its wholly unnecessary discussion of the Prevention of Homelessness Act, *N.J.S.A.* 52:27D–280 to –287, and that Act's effect on the Housing Authority's public-policy responsibilities. According to the majority, the trial court's exercise of discretion to vacate the judgment evicting Little was valid in part because it "reflected a pragmatic recognition that the State's homelessness prevention policies would be disserved by the eviction of a tenant in public housing who had demonstrated satisfactorily her ability to fulfill

her rental obligations." *Ante* at 293, 639 A.2d at 295. More specifically, the majority argues that the discretionary ruling by the trial court to vacate the judgment of possession is bolstered by the fact that failure to do so would result in an unseemly and incongruous situation in which one public authority (the Housing Authority) would be seeking to evict Little, while another (the Emergency Assistance Program) would be seeking to provide her with housing. In effect, the majority holds that tenants in public housing have a better argument against eviction than do tenants in private housing.

In the two relevant statutes addressing the eviction and dispossession of tenants, the Legislature has not distinguished between tenants in public housing and tenants in private housing. The Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12, protects all tenants—both public-housing tenants and private-housing tenants—from eviction without good cause. One of the enumerated statutory grounds for eviction is failure to pay rent. *N.J.S.A.* 2A:18–61.1a. The Legislature did not exempt public-housing tenants from potential eviction for failure to pay rent, nor did it say that the landlords of public-housing tenants should have a greater burden than private landlords in seeking eviction on those grounds. Similarly, nothing in *N.J.S.A.* 2A:42–10.16 of the Tenant Hardship Act indicates a legislative intent to distinguish between public-housing and private-housing tenants for the purposes of summary dispossession.

Although the possibility that a dispossessed tenant may become homeless is an equitable consideration that a trial court should take into account in deciding whether to vacate a judgment of possession pursuant to *Rule* 4:50–1, that possibility should be given exactly the same weight regardless of whether a tenant is dispossessed by a private landlord or a public-housing authority. I am as sympathetic to the plight of the homeless as the majority. I am also as committed as the majority to allowing trial courts to consider the possibility of homelessness in deciding whether to vacate a judgment of possession pursuant to *Rule* 4:50–1. Howev-

er, the Legislature should strike the proper balance between providing public housing, providing assistance to dispossessed tenants, and ensuring that tenants who fail to pay rent are subject to eviction. The relevant statutes do not distinguish between public-housing tenants and private-housing tenants; neither should this Court.

Justice HANDLER joins in this concurrence.

HANDLER and GARIBALDI, JJ., concurring in result.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.