# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3989-16T2

L.P.,

     Plaintiff-Respondent,

v.

R.B.,

     Defendant-Appellant.

_____

     Submitted November 7, 2018 – Decided December 24, 2018

     Before Judges Yannotti and Gilson.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0309-15.

     Richard P. Galler, attorney for appellant.

     Respondent has not filed a brief.

PER CURIAM

     Defendant appeals from an order entered by the Family Part on March 31, 2017, which denied his motion to dissolve a final restraining order (FRO)

entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

We briefly summarize the relevant facts and procedural history.  On August 11, 2014, defendant was charged with simple assault in violation of N.J.S.A. 2C:12-1(a)(1), a disorderly persons offense.  The charge arose out of a domestic dispute between the parties that occurred on August 9, 2014, at defendant's apartment.

On August 11, 2014, L.P. filed a domestic violence complaint pursuant to the PDVA, and sought a temporary restraining order (TRO).  The court granted the TRO and scheduled a hearing on plaintiff's application for a FRO.  The court heard the matter on August 19, 2014.  Defendant had notice of the proceeding, but did not appear.

Plaintiff testified that she and defendant had been in a dating relationship, and on August 9, 2014, she went to defendant's apartment.  Plaintiff stated that at the time, another woman was in the apartment.  She said defendant grabbed her, picked her up off the floor, threw her out into the hallway, and shut the door.

A-3989-16T2

Defendant let plaintiff back into the apartment so that she could look for her keys. She sat down on the couch. According to plaintiff, defendant lifted her up, carried her to the hall, and threw her against a wall. Plaintiff left. That evening, she went to a hospital and remained there overnight. Plaintiff testified that she suffered bruises to her left shoulder and neck. She stated that she feared defendant because he had acted irrationally.

The Family Part judge found that defendant had committed a simple assault upon plaintiff, and plaintiff required a FRO because she was in fear of defendant. The judge entered the FRO, which required, among other things, that defendant attend a batterers intervention program.

On September 17, 2014, defendant appeared in the municipal court on the criminal charge. Defendant informed the judge he intended to retain counsel, and the judge adjourned the matter. On November 12, 2014, defendant appeared again in the municipal court and informed the judge he wanted to consult an attorney. The judge adjourned the matter again, but told defendant that if he did not have an attorney on the next scheduled trial date, the matter would proceed without counsel.

On December 10, 2014, defendant appeared for trial. Defendant informed the judge that he did not have an attorney and he wanted to proceed without

3

counsel. The judge permitted defendant to represent himself. Plaintiff and defendant testified. After defendant and the municipal prosecutor gave closing statements, the judge found defendant guilty of simple assault. The judge sentenced defendant to one year of probation, and required that he pay a fine, court costs, and other fees.

Thereafter, defendant retained an attorney and sought de novo review in the Law Division. The Law Division judge filed a written opinion dated October 19, 2015, in which she concluded defendant did not knowingly and intelligently waive his right to counsel under the standards enunciated in State v. Crisafi, 128 N.J. 499, 510-12 (1992), and State v. Reddish, 181 N.J. 553, 593-95 (2004). The judge vacated the conviction and remanded the matter to the municipal court for a new trial.

II.

On January 21, 2016, a different municipal court judge conducted a new trial in the criminal matter. Plaintiff testified that she had known defendant for about twenty years, and he was her boyfriend for about a year before the incident on August 9, 2014. She noted that defendant had lived in her apartment in New York City for eight months. In April 2014, defendant moved to Lodi.

On Saturday morning, August 9, 2014, plaintiff went to defendant's apartment in Lodi. She arrived there between 9:00 or 9:30 a.m. Plaintiff was worried because she had not heard from defendant since the previous day. Plaintiff did not have a key to defendant's apartment, so she knocked on the door. Defendant opened the door, and she went in. Plaintiff told defendant she was there because she was worried about him, but he did not respond. She heard the sound of someone "shuffling around" and said, "[W]hat is that?" Defendant did not reply.

Plaintiff started to walk to the rear of the apartment. According to plaintiff, defendant picked her up and threw her outside in the hallway. She claimed she landed against the cement wall. Defendant slammed the door shut. Plaintiff stated she was stunned and shocked. She got up and checked for bruises or bleeding. Plaintiff was going to leave, but noticed that she did not have her shoes or car keys, which apparently fell when defendant picked her up.

Plaintiff banged on the door and asked defendant to let her in because she did not have her shoes or car keys. He did not immediately respond, so she continued to knock on the door "intermittently." About ten minutes later, defendant opened the door and plaintiff told defendant she needed her shoes and keys. Defendant gave her the shoes, and she told him she had to look for her

keys.  Defendant allowed plaintiff to look for her keys.  She was leaning on the couch when defendant picked her up a second time and dropped her in the hallway.

Plaintiff again banged on defendant's apartment door.  She told defendant she needed her keys.  Defendant told her to "get the 'f' out."  She asked defendant for her clothes, which were in the apartment.  He opened the door and placed a bin with her clothes in the hall.  She bent down to pick up the bin, and found her keys in a corner of the hallway.  Defendant helped her carry the bin to her car.

Plaintiff testified that she went home and took a nap.  She awoke around 7:00 p.m. feeling "sore and achy."  She went to a hospital in New York City and remained there until around 3:00 or 4:00 a.m. on Sunday.  On Monday, August 11, 2014, she went to the police station in Lodi and reported the incident.

Plaintiff also presented testimony from Detective Eric Castillo, an officer in the Lodi Police Department.  Castillo was the desk officer in the police station on August 11, 2014.  He recalled a female entering and approaching the front desk.  She reported that she had been involved in an altercation with her boyfriend.  Castillo told plaintiff she was a victim of domestic violence and she would have to report it.

A-3989-16T2

Castillo advised plaintiff that she could apply for a TRO.  Plaintiff filed a complaint, and a judge found probable cause defendant had committed an assault.  Thereafter, Castillo and a partner arrested defendant.  In his police report, Castillo noted that he observed scratches on the victim's legs and arm.

Defendant testified on his own behalf.  He stated that he had known plaintiff for twenty years.  They dated on and off and were "romantic" at times.  He lived with plaintiff in New York City for several months, but moved out of her apartment at the end of March 2014.  Thereafter, they rekindled their relationship, and plaintiff visited his apartment several times.

Defendant stated that on August 9, 2014, he was in his apartment and was awakened by a noise.  He heard plaintiff outside "screeching, banging, and yelling."  Defendant opened the door and plaintiff charged in.  She began to argue with his guest, T.W.[1]  Defendant felt the arguing was "getting worse" so he picked plaintiff up and put her outside the door to the apartment.  He claimed she was standing.  He closed the door.  He stated that he did not throw plaintiff against the wall or drop her on the floor.

Defendant testified that plaintiff continued to curse and yell.  According to defendant, plaintiff said she could not believe he put her out of his apartment

---

[1] We use initials to identify this individual, in order to protect her privacy.

A-3989-16T2

"over this bitch." She continued to bang on the door, and stated that she could not find her keys. Defendant did not recall plaintiff saying anything about shoes. He let her in the apartment so she could look for her keys. She started screaming at T.W., and defendant tried to keep them apart.

Defendant stated that he was afraid plaintiff was going to attack his guest and start a fight. He picked plaintiff up and carried her outside of the apartment. He said he placed her down, feet first. Defendant believed plaintiff had her shoes at that time. Plaintiff said she wanted her other personal items, which were in his apartment.

Defendant put plaintiff's belongings in a plastic bin and brought it out to her. Then, he escorted plaintiff to her car. Defendant stated that "plaintiff seemed fine to [him]." He said her hair was not out of place. She did not complain about any injuries, and did not indicate she was going to call the police.

T.W. testified that she has known defendant for about two years. They became acquainted through their mutual interest in music. T.W. was in defendant's apartment on August 9, 2014. She explained that defendant had asked her to visit him the previous evening to listen to some songs. She stayed

overnight because she did not want to travel back to Brooklyn alone. She said she slept in the living room and defendant slept in the bedroom.

T.W. was awakened the following morning when she heard someone knocking at the door. She could hear someone banging and cursing. She explained that defendant opened the door and plaintiff charged into the apartment. T.W. thought plaintiff was trying to attack her. She said defendant managed to get plaintiff out of the apartment and then closed the door. She recalled defendant putting plaintiff's personal belongings in a bin, and she heard plaintiff cursing and screaming until she got to her car.

The municipal court judge placed his decision on the record. The judge found that the State had not proven beyond a reasonable doubt that defendant committed a simple assault, in violation of N.J.S.A. 2C:12-1(a)(1). The judge found that defendant's version of the incident was to some extent corroborated by T.W.'s testimony, and there was no corroboration of plaintiff's version of the incident. The judge stated that plaintiff had no right to be in defendant's apartment, and defendant had the right to use reasonable force in defending himself and his guest.

The judge also found there was insufficient evidence to find defendant guilty of the lesser-included offense of harassment under N.J.S.A. 2C:33-4. The

A-3989-16T2

judge noted that the statute requires proof that the defendant acted with a purpose to harass. The judge stated that defendant acted to remove an uninvited guest from his apartment, and he did not act with a purpose to harass plaintiff.

Thereafter, defendant filed a motion in the Family Part to vacate the FRO. On March 31, 2016, another Family Part judge heard oral argument on the application and placed his decision on the record.[2] The judge reviewed the relevant factors for dissolving a FRO, which are identified in Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995), and found that defendant had not shown good cause to dissolve the order.

The judge also found that defendant had not shown he was entitled to relief from the order under Rule 4:50-1(a) or (f). The judge entered an order denying the motion and this appeal followed. The judge later filed a letter dated November 8, 2017, amplifying the reasons for his order.

### III.

On appeal, defendant argues: (1) the FRO should be dissolved because the municipal court judge dismissed the underlying criminal charges of assault and harassment; and (2) the FRO should be vacated pursuant to Carfagno or Rule 4:50-1(a) or (f). Having thoroughly considered these arguments in light of the

---

[2] We note that the judge who issued the FRO had retired.

record and the applicable law, we conclude defendant's arguments are without merit.

We note initially that the trial court's findings of fact are binding on appeal "if supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). An appellate court may not set aside a trial court's factual findings unless convinced the findings "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

Moreover, an appellate court should defer to fact-finding by the Family Part because of that court's "special expertise in the field of domestic relations." Ibid. (citing Brennan v. Orban, 145 N.J. 282, 300-01 (1996)). However, we owe no deference to the trial court's ruling on an issue of law, which we review de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

To secure a FRO under the PDVA, the plaintiff must establish that the defendant committed a predicate act of domestic violence, as defined in N.J.S.A. 2C:25-19(a), and that a restraining order is required to protect the victim from further acts of domestic violence. Silver v. Silver, 387 N.J. Super. 112, 125-27

(App. Div. 2006). The predicate acts in N.J.S.A. 2C:25-19(a) include simple assault under N.J.S.A. 2C:12-1, and harassment under N.J.S.A. 2C:33-4. The PDVA allows the trial court to dissolve or modify a FRO upon good cause shown. N.J.S.A. 2C:25-29(d).

Here, defendant argues good cause exists because after a trial, the municipal court judge found that the State had not proven beyond a reasonable doubt that on August 9, 2014, defendant committed the criminal charge of assault or the lesser-included offense of harassment. However, as the Family Part judge recognized in denying defendant's motion to dissolve the FRO, the standard of proof for a criminal charge is proof beyond a reasonable doubt, whereas under the PDVA, the standard of proof for obtaining a FRO is preponderance of the evidence. N.J.S.A. 2C:25-29(a). The Family Part judge correctly determined it was not bound by the findings of the municipal court judge in the criminal matter.

Indeed, in State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007), we observed that the purposes of an action under the PDVA and a criminal action are distinctly different. We noted that an action in the Family Part under the PDVA is intended "to protect an individual victim," whereas in a criminal case, "the State prosecutes a defendant on behalf of the public interest." Ibid.

A-3989-16T2

The record also supports the Family court's finding that defendant failed to show good cause to dissolve the FRO. In <u>Carfagno</u>, the Chancery Division identified factors a court should consider in making this determination:

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times the defendant has been convicted of contempt for violating the order; (5) whether the defendant has continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
>
> [<u>Carfagno</u>, 288 N.J. Super. at 435.]

Here, the Family Part judge found that: (1) plaintiff had not affirmatively consented to the dissolution of the FRO and did not attend the hearing; (2) it was unclear if plaintiff still fears defendant; (3) the parties had no ongoing relationship; (4) defendant has no prior violations of a FRO and no contempt citations; (5) drug or alcohol abuse is not a factor; (6) there is no evidence that defendant has been involved in violent acts with other persons; (7) defendant engaged in counseling but never completed the counseling program required by

the FRO; (8) defendant is fifty-four-years old and seemed to be in good health; and (9) there is no evidence that a restraining order has been entered against defendant in any other jurisdiction.

The judge noted that he relied heavily on defendant's failure to complete the counseling program ordered when the FRO was entered. The judge also noted that defendant had not argued that the FRO adversely affected his job, and that defendant was not seeking to dissolve the FRO for a background check, new employment, or for any other specific reason.

The judge found that defendant was seeking to dissolve the FRO because he had been found not guilty of assault and harassment in the related criminal action, which was not a sufficient basis for dissolution of the order. We are convinced there is sufficient credible evidence in the record to support the judge's findings.

The judge also found that defendant had not established a basis for relief from the FRO under Rule 4:50-1. The rule permits a court to grant a party relief from a final judgment or order for the following reasons:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic),

14

misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

[R. 4:50-1.]

A motion for relief under subsections (a), (b), and (c) must be made within a year after the judgment or order. R. 4:50-2. Relief under the other subsections of Rule 4:50-1 must "be made within a reasonable time." Ibid.

On appeal, defendant argues that he sought relief under subsection (f) of Rule 4:50-1 within a reasonable time after the FRO was entered. He also argues that the trial court erred by denying relief under Rule 4:50-1(a) or (f). Again, we disagree.

A trial court's decision under Rule 4:50-1 should be given "substantial deference," and will not be reversed unless shown to be "a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citing DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009); Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). Furthermore, relief under subsection (f) is available "only when 'truly exceptional circumstances are

15                                                          A-3989-16T2

present.'" Guillaume, 209 N.J. at 484 (quoting Little, 135 N.J. at 286). "The rule is limited to 'situations in which, were it not applied, a grave injustice would occur.'" Ibid. (quoting Little, 135 N.J. at 289).

The Family court did not err in finding defendant was not entitled to relief under Rule 4:50-1(a). The FRO was entered on August 19, 2014, and defendant did not seek relief from the order within a year. The Family court also did not err in finding that defendant failed to establish grounds for relief under Rule 4:50-1(f), even if we assume that defendant submitted his application for relief from the FRO within a reasonable time after that order was entered. As the judge explained, defendant did not show that relief from the order was due to "truly exceptional circumstances" or that a "grave injustice would occur" if relief is denied. See ibid. (quoting Little, 135 N.J. at 284, 289). The record supports that finding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3989-16T2