# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0233-15T3
             A-0291-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

J.O. and C.O.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP
of C.O. and K.O., Minors.

_____

        Submitted October 3, 2017 — Decided October 25, 2017

        Before Judges Reisner and Gilson.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0031-15.

        Joseph E. Krakora, Public Defender, attorney for appellant J.O. (Anastasia P. Winslow, Designated Counsel and on the brief).

        Lesnevich, Marzano-Lesnevich, Trigg, O'Cathain & O'Cathain, LLC, attorneys for appellant C.O. (Amanda S. Trigg, of counsel and on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Jane S. Blank, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

The parents of two children appeal from an August 26, 2015 judgment terminating their parental rights to their daughters and granting guardianship of the children to the Division of Child Protection and Permanency (Division). They also appeal from an October 12, 2016 order denying their motions to vacate or reconsider the judgment. We affirm because the evidence presented by the Division at the guardianship trial and a subsequent evidentiary hearing clearly and convincingly established the four prongs necessary for terminating parental rights in accordance with the best interests of the children. See N.J.S.A. 40:4C-15.1(a).

I.

J.O. (Jill), the mother, and C.O. (Charles), the father, are the parents of C.O. (Cara), born in 2007, and K.O. (Kathy), born in 2008.[1] The Division became involved with the family in January

---

[1] To protect privacy interests and for ease of reading, we use initials and fictitious names for the parents and child. See R. 1:38-3(d)(12).

2012. Initially, the Division had concerns related to unsanitary living conditions and the children's hygiene. The children's teacher reported that Cara and Kathy came to school several times with fecal matter on their clothing and school supplies and that their faces, nails, and clothing were often dirty.

Thereafter, the Division received reports related to domestic violence by Charles against Jill. In March 2012, Jill described two instances of domestic violence by Charles against her. The Division referred Jill and Charles for counseling and recommended psychological evaluations and parenting assessments. The Center for Evaluation and Counseling (CEC) conducted evaluations and concluded that Jill was a "high-risk parent for child neglect" and Charles was "at-risk for aggressive and violent behaviors given his significant anger management difficulties[.]"

In April 2013, the Division learned that Jill was in a relationship with a convicted sex offender, who was registered under Megan's Law, N.J.S.A. 2C:7-1 to -11. The Division also learned that the offender was living in the family's home with the children. Accordingly, the Division instituted a Safety Protection Plan to prevent the sex offender from having contact with the children. On multiple occasions, however, Jill and Charles violated the plan by allowing the sex offender to stay at the home and socialize with the children.

By July 2013, the Division had increasing concerns regarding Jill and Charles repeatedly allowing their young daughters to be in the presence of and exposed to the sex offender. The Division was also concerned that Charles continued to struggle with anger management issues, and that the relationship between Charles and Jill was volatile and having a negative impact on the children. Accordingly, in July 2013, the Division conducted an emergent removal of the children. Since then, the children have been in the care of relatives and, most recently, they have lived with their paternal grandmother for a sustained period.

Both before and after the removal of the children, the Division provided the parents with various services, including psychological evaluations, individualized counseling, anger management programs, parenting classes, and alternatives to domestic violence training (ADV). Jill's and Charles's attendance at treatment and counseling services was inconsistent, and they did not complete many of the services arranged by the Division.

A five-day guardianship trial was conducted between March and April 2015, before Judge John A. Conte. The Division presented testimony from the children's paternal uncle and a Division caseworker, and expert testimony from Dr. Robert Miller. Dr. James Reynolds presented expert testimony on behalf of Charles.

Based on the evidence at trial, Judge Conte found that the Division presented clear and convincing evidence of the four prongs necessary to terminate both Jill's and Charles's parental rights. N.J.S.A. 30:4C-15.1(a). In his 130-page written opinion, Judge Conte made detailed findings concerning the parents' abuse and neglect of Cara and Kathy that placed them at risk of harm. He found that Jill and Charles were unwilling or unable to eliminate the harm facing Cara and Kathy despite having been provided with a number of services designed to help them achieve reunification. Judge Conte also found that the Division made reasonable efforts to reunify Jill and Charles with Cara and Kathy and explored, but properly ruled out, certain family members as potential caregivers of Cara and Kathy. Finally, relying on the expert testimony of Dr. Miller, Judge Conte found that Cara and Kathy would suffer harm if they were removed from their paternal uncle and grandmother, and it would not do more harm than good to terminate both Jill's and Charles's parental rights with the plan that Cara and Kathy be adopted by their paternal uncle.

Both parents appealed from the August 26, 2015 judgment. While that appeal was pending, the paternal uncle permanently left the grandmother's home and made it clear that he no longer intended to adopt his nieces. The children remained in the care of the paternal grandmother, who expressed a commitment to adopting them.

Jill, and subsequently Charles, filed Rule 4:50-1 motions to remand the matter for reconsideration of the guardianship judgment in light of the changed circumstances regarding the permanency plan, and to address other evidentiary issues that arose during the trial.

On remand, Judge Conte settled the record, and thereafter, the matter was transferred to Judge William R. DeLorenzo. To address the change in the permanency plan, Judge DeLorenzo directed the parties to conduct bonding evaluations between the grandmother and each of the children. The judge found no basis to address the other evidentiary issues raised and limited his review to whether the fourth prong of the best interests test was satisfied.

On September 30, 2016, Judge DeLorenzo conducted a hearing and took expert testimony from Dr. Miller, Dr. Reynolds, and Dr. Goldstein. Each expert had conducted bonding evaluations between the children and the paternal grandmother. All three experts found that the children had a strong, secure bond with the paternal grandmother and that she was an appropriate caregiver to the children. Accordingly, Judge DeLorenzo found clear and convincing evidence to satisfy the fourth prong of the best interests test. On October 12, 2016, Judge DeLorenzo issued a written opinion detailing his findings and entered an order enforcing the August 26, 2015 guardianship judgment.

Jill and Charles each appeal from the August 26, 2015 judgment and October 12, 2016 order. They argue that the Division failed to present clear and convincing evidence necessary for terminating their parental rights. Further, they contend that due to changed circumstances regarding the permanency plan, the guardianship judgment should be vacated. Jill also argues that the court erred, on remand, by refusing to consider evidence of her completion of ADV and address the applicability of the Americans with Disabilities Act (ADA) to services provided by the Division.

The scope of our review of an appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We uphold a trial judge's factual findings if they are "supported by adequate, substantial, and credible evidence." Ibid. "We accord deference to fact findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). We will not overturn a family court's factual findings unless they "went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). We do not, however, give "special deference"

to the court's interpretation of the law. <u>D.W. v. R.W.</u>, 212 <u>N.J.</u> 232, 245 (2012).

When considering termination of parental rights, the court focuses on the "best interests" of the children. <u>In re Guardianship of K.H.O.</u>, 161 <u>N.J.</u> 337, 347 (1999). In striking a balance between a parent's constitutional rights and the children's fundamental needs, courts employ a four-prong test under <u>N.J.S.A.</u> 30:4C-15.1(a), which requires clear and convincing evidence that:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his [or her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

These four criteria "are neither discrete nor separate, but are interrelated and overlap." <u>N.J. Div. of Youth & Family Servs. v.</u>

L.J.D., 428 N.J. Super. 451, 479 (App. Div. 2012). Together they "provide a comprehensive standard that identifies a child's best interests." K.H.O., supra, 161 N.J. at 348.

Having reviewed all of the arguments presented by Jill and Charles in light of the record and law, we affirm substantially for the reasons set forth in Judge Conte's and Judge DeLorenzo's thorough and well-reasoned written opinions. We add a few additional comments.

Jill and Charles each challenge certain factual findings of the four prongs necessary for terminating their parental rights under N.J.S.A. 30:4C-15.1(a). As previously summarized, Judge Conte found clear and convincing evidence of all four prongs. On hearing the motion for reconsideration, Judge DeLorenzo found no basis to disturb Judge Conte's findings with respect to the first three prongs. Further, the record amply supports Judge DeLorenzo's finding that the Division clearly and convincingly showed that termination of parental rights and adoption by the paternal grandmother would not do more harm than good. In so holding, Judge DeLorenzo credited and relied on the experts' testimony. We have no reason to disturb that reliance.

Jill contends that on remand the court erred in failing to consider her completion of ADV as evidence of changed circumstances that support relief from the judgment. Domestic violence between

Jill and Charles was not the only basis for terminating their parental rights. Jill presents no evidence to show that she has taken the necessary steps to protect her children from exposure to the sex offender. Thus, a risk of harm to the children's safety, health, and development still exists. Jill has not demonstrated sufficient evidence of changed circumstances that would justify vacating the judgment. Jill has also not shown that termination of her parental rights is not in the children's best interests.

Jill also argues that the trial court failed to consider a United States Department of Health and Human Services and United States Department of Justice directive (Directive) regarding the applicability of the ADA to family court matters. There are several flaws with this argument. First, Jill raised this argument for the first time in her motion for reconsideration, rather than at trial. See Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 463 (App. Div.), certif. denied, 174 N.J. 544 (2002) (holding that a party is not entitled to reconsideration based on new or additional information if that information was available at the time of trial). Moreover, we review the denial of reconsideration under an abuse of discretion standard. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). We find no such abuse.

Second, Jill never informed the trial court what disabilities she suffered from. Indeed, there is no evidence in the record that she has a recognized disability. Jill merely asserts that the court failed to consider the Directive in making its findings on the third prong of the best interests analysis. Jill does not, however, explain which services should have been provided or how the provided services failed to accommodate her disability. As previously stated, the Division provided Jill with multiple services aimed at reunification with the children, many of which she did not use or attend. Accordingly, the trial court's finding that the Division satisfied the third prong is supported by substantial credible evidence in the record.

Judge Conte and Judge DeLorenzo both correctly analyzed the relevant law and concluded that the Division had met the legal requirements for a judgment of guardianship. See N.J.S.A. 30:4C-15.1(a); K.H.O., supra, 161 N.J. at 347-48. All of the factual findings are supported by substantial credible evidence. See F.M., supra, 211 N.J. at 448-49. We discern no basis to disturb Judge Conte's and Judge DeLorenzo's factual findings, and we agree with their legal conclusions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0233-15T3