**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3104-18T4

137-147 36TH STREET
HCPVI, LLC,

     Plaintiff-Respondent,

v.

JOSEPHINA PEGUERO,

     Defendant-Appellant.

_____

              Argued telephonically August 13, 2020 –
              Decided August 27, 2020

              Before Judges Moynihan and Mawla.

              On appeal from the Superior Court of New Jersey, Law
              Division, Hudson County, Docket No. LT-10153-18.

              James B. Shovlin argued the cause for appellant
              (Chasan Lamparello Mallon & Cappuzzo, PC,
              attorneys; James B. Shovlin on the briefs).

              Tracey Goldstein argued the cause for respondent
              (Feinstein Raiss Kelin Booker & Goldstein LLC,
              attorneys; Tracey Goldstein on the brief).

PER CURIAM

Named defendant Josephina Peguero[1] and her two sons, Freddy Abreu and Nelson Peguero (collectively, the lease tenants) were tenants under a lease for an apartment with 36th Street Realty, LLC; appellant Jacobo Pena was never named on a lease.[2] In June 2018, 137-47 36th Street LLC (plaintiff) sent a notice to "JOSE[PH]INA PEGUERO, TENANT(s), AND ANY AND ALL OTHER UNAUTHORIZED OCCUPANTS" to cease violating the lease terms by "permitting unauthorized persons to reside in [the] apartment and/or are subletting or assigning [the] lease." Plaintiff later filed a complaint against Peguero and an unauthorized tenant designated "John Doe," seeking a judgment of possession.

---

[1] Josephina is also spelled as "Josefina" in some portions of the record. We use the spelling of her first name that is contained in the notice of appeal.

[2] The only lease provided in the record was for a one-year term commencing December 1, 2008 and ending November 30, 2009. Inasmuch as the record does not support that that lease was presented to the second trial judge, we will not consider same as part of the record. R. 2:5-4(a). Pena's merits brief, however, contains these factual assertions; we use them not to determine this appeal, but to give context to the meager record consisting of the parties' filings and the notices entered as C-1 and C-2 in evidence by the second trial judge who entered the order under appeal. Both parties' merits briefs and appendices contain many factual allegations and documents that were not presented to the second trial judge. We constrain our review to the record made before that judge. Hisenaj v. Kuehner, 194 N.J. 6, 25 (2008).

A-3104-18T4

On the date set for trial, plaintiff, the lease tenants and Pena,[3] a purported resident of the apartment, entered into a consent to enter a judgment of possession allowing the lease tenants and Pena to remain in residence until no later than February 28, 2019, at a monthly rental of $670. Plaintiff agreed to return rental-payment checks for August and September. The first trial judge questioned Abreu and Pena who said he was "authorized to speak on . . . behalf" of Nelson who was in service of the United States Navy and stationed in San Diego.[4] Pena testified he was not under the influence and, represented by counsel, had no questions of his attorney; he stated his desire for the judge to accept the consent agreement.

On March 8, 2019, based on Pena's certification that "the [l]andlord sent [him] a notice of rent increase and [he] paid it," the second trial judge entered an order to show cause why the judgment of possession should not be vacated.

---

[3] Pena is identified in the caption of the consent as Jacobo Yeta although he signed as Jacobo W. Pena. The first trial judge addressed him on the record as "Mr. Peguero." He was later addressed by a second trial judge as "Mr. Yetta." It is clear from the record that all references are to Pena.

[4] According to Pena's merits brief, Abreu, his stepson, "moved out of the apartment in the early 2000's," and Josephina—identified as Pena's "partner"—passed away in 2005; Nelson moved out "[a]pproximately five years ago[.]" This appeal involves only Pena.

A-3104-18T4

Although a motion with brief was not filed by Pena, the second trial judge considered arguments made on the return date by Pena's new counsel that the judgment be vacated pursuant to Rule 4:50-1(f).[5] The second trial judge entered an order staying the execution of a warrant of removal until April 30, 2019, a date to which plaintiff agreed, after which Pena would have no right to occupy the apartment.

Pena appeals from that order.[6] We affirm.

Pena presented two oral arguments to the second trial judge, albeit without moving any documents into evidence. The judge, however, entered as "stipulated document[s]" a notice to quit with rent increase served by plaintiff in late December 2018—after the October 1, 2018 consent agreement and before the February 28, 2019 removal date. Pena contended that notice, which raised

---

[5] Rule 4:50-1(f) provides: "On motion, with briefs, and upon such terms as are just, the [judge] may relieve a party . . . from a final judgment . . . for . . . any other reason [not enumerated in subsections (a) through (e)] justifying relief from the operation of the judgment[.]"

[6] The first trial judge granted Pena's application for a stay; according to plaintiff's merits brief, "[n]o written [o]rder exists as the [o]rder was just entered on the record." Plaintiff's appendix includes a copy of a subsequent order entered by the first trial judge staying execution of the judgment of possession and warrant of removal until January 15, 2020. No extensions of the stay are contained in the record, although at oral argument the parties agreed that a stay order is currently in place until mid-September.

4

the rent from $670.54 to $683.28 beginning February 1, 2019, created a new tenancy which was accepted by Pena who paid the increased rent. Pena also argued he received "bad advice" from the attorney who represented him when the consent agreement was entered, and that he should have proceeded to trial arguing he was "a functional co-tenant, as he has been [living in the apartment] since 1990 . . . paying rent." Further, Pena urged that "because of the . . . intent of the . . . Anti-Eviction Act[, N.J.S.A. 2A:18-61.1 to -61.12,] which has a strong public policy of keeping not only people in their apartments but elderly individuals . . . and disabled individuals, all of which [Pena] classify (sic) under," the interests of justice compelled the judgment to be vacated under Rule 4:50-1(f).

The second trial judge determined "the very limited issue [before him was] whether . . . a new tenancy was created by virtue of the notice to quit with rent increase[.]" The judge found that a disclaimer in that notice specified that a new tenancy or lease was not being offered, and concluded a new tenancy was not created.

We review a trial judge's grant or denial of a motion for relief from judgment with substantial deference and will not reverse it "unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449,

467 (2012). "[A]n abuse of discretion occurs when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 319 (App. Div. 2012) (alteration in original) (quoting Guillaume, 209 N.J. at 467-68).

As to a Rule 4:50-1 motion, our Supreme Court has cautioned that although that Rule has a "broad reach . . . designed to encompass a limitless variety of factual situations, including judgments arising from summary-dispossess proceedings," Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994), the Rule should be used "sparingly, in exceptional situations; the Rule is designed to provide relief from judgments in situations in which, were it not applied, a grave injustice would occur," ibid. "Because of the importance that we attach to the finality of judgments, relief under Rule 4:50-1(f) is available only when 'truly exceptional circumstances are present.'" Id. at 286 (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)).

We agree with the second trial judge's conclusion that the notice to quit with rent increase did not create a tenancy with Pena. We first note, the notice was not sent to Pena; it was addressed to Josephina.

A-3104-18T4

Pena was never a tenant. The record is bare of any evidence that before the first trial date plaintiff had any knowledge of Pena's identity. He is not listed on the lease. He was named as John Doe in the complaint. Thus, we find no merit to Pena's argument that the notice to quit with rent increase created a new tenancy at the increased rental.

The timing of the notices, after the consent agreement was entered and before Pena was required to vacate, does not persuade us that plaintiff intended to offer Pena a tenancy. The disclaimer in the notice of rent increase provided in part:

> The enclosed notice is an <u>automated notice</u> that is being sent to all tenants in [the] building and is not any way a conscious effort on the part of [plaintiff] to waive any of its rights it has vis-à-vis a particular tenant or occupant. That means, if you have been issued a [n]otice to [q]uit demanding possession of your apartment, or there is a pending eviction proceeding against you, or a warrant of removal has been issued against you, or you are currently staying in the apartment pursuant to a hardship stay or pursuant to a stipulation agreement or in connection with your employment by [plaintiff], or you have a delinquent balance, or you are not complying with a [n]otice to [c]ease, <u>those proceedings, balances, notices and/or agreements are not in any way affected by this notice of rent increase; [plaintiff] is NOT offering you a new tenancy and/or lease nor reducing the amount of rent or use and occupancy that you are require[d] to pay.</u> The issuance of this notice of rent increase does not in any way constitute a waiver of [plaintiff's] rights, including,

A-3104-18T4

> without limitation, the right to pursue an eviction proceeding and lockout against you.
>
> [(Emphasis added).]

The very terms of the notice state it was "an automated notice" sent to all tenants to effect a rent increase for the coming year. Although sending shotgun notices to tenants who may be involved in tenancy actions may engender confusion, it did not signify plaintiff's intent to enter into a lease agreement where one did not exist with Pena. And though the consent agreement is not one of the enumerated circumstances in the disclaimer that were not impacted by the notice, the language makes clear plaintiff's intention not to abrogate the consent agreement.

Nor are we persuaded by Pena's argument that the provisions of the Anti-Eviction Act prohibit plaintiff from invoking the disclaimer to "infringe upon rights given to a tenant by State [l]aw." Pena cites for the first time N.J.S.A. 2A:18-61.4, 2A:18-61.36 and 2A:18-61.55 as provisions "which discuss the unenforceability of provisions in contracts and leases in which a tenant waives any rights or protections awarded to him by the State of New Jersey[.]" While that argument is typically waived because it was not presented to the trial judge, Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), we address it only

because of Pena's casual reference to the second trial judge's mention of the Anti-Eviction Act.

The cited provisions extend rights to tenants. Pena is not one. Furthermore, neither the disclaimer nor the notice is a lease or other agreement requiring a tenant to waive any rights; as such the cited statutes are inapplicable.[7] And, the disclaimer did not reserve any rights to plaintiff to the detriment of Pena; Pena waived whatever rights he may have had by entering into the consent agreement in exchange for his continued occupancy until the end of February

---

[7] N.J.S.A. 2A:18-61.4 provides:

> Any provision in a lease whereby any tenant covered by section 2 of this act agrees that his tenancy may be terminated or not renewed for other than good cause as defined in section 2, or whereby the tenant waives any other rights under this act shall be deemed against public policy and unenforceable.

N.J.S.A. 2A:18-61.36 provides: "Any agreement whereby the tenant waives any rights under P.L.1981, c. 226 (C. 2A:18-61.22 et seq.) on or after the effective date of this 1983 amendatory act shall be deemed to be against public policy and unenforceable."

N.J.S.A. 2A:18-61.55 provides: "Any agreement whereby the tenant waives any rights under this act shall be deemed to be against public policy and unenforceable."

2019. The disclaimer did not violate any right granted to a tenant under our laws.

Pena's argument that the disclaimer should have been presented in Spanish, and plaintiff's failure to do so prevented Pena from understanding its terms is without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We note only that the argument is waived because it was not made to the second trial judge, Nieder, 62 N.J. at 234, and the notice including the disclaimer was not addressed to Pena.

We observe the second trial judge did not address Pena's oral claim on the order to show cause return date that exceptional circumstances justifying the vacation of the judgment under Rule 4:50-1(f) were established because Pena was "a functional co-tenant, as he has been [living in the apartment] since 1990" as a tenant, and had been paying rent, and the Anti-Eviction Act's "strong public policy of keeping not only people in their apartments but elderly individuals . . . and disabled individuals, all of which [Pena] classify (sic) under[.]"

While we would often remand a case for a trial judge to set forth findings of fact and conclusion of law concerning an argument raised by a party, R. 1:7-4(a), we determine there was no evidence presented to the second trial judge to support Pena's claim of exceptional circumstances.

A-3104-18T4

Pena's counsel told the second trial judge, they "have proofs here that [Pena's] been in the building for this amount of time" since 1990. Proofs of that claim, however, were never presented. Nor were there any proofs that Pena paid rent, or that plaintiff knew of Pena's occupancy and acquiesced to it. Thus, there was no evidence to support his present allegation that he established a co-tenancy under the tripartite test announced in Maglies v. Estate of Guy, 193 N.J. 108, 126 (2007) (holding a functional co-tenant entitled to protection under the Anti-Eviction Act is "one who can show that [he or] she has been continuously in residence; that [he or] she has been a substantial contributor toward satisfaction of the tenancy's financial obligations; and that [his or] her contribution has been acknowledged and acquiesced to by [his or] her landlord").[8]

Nor did Pena submit any evidence to support his general averment that he was elderly and disabled. And he did not raise his financial status to the second

---

[8]  We do not consider whether this case is analogous to Maglies, or the other cases now cited by Pena in his merits brief in support of this argument. Those cases were not brought to the second trial judge's attention. Indeed, Pena only mentioned the "functional co-tenant" issue when his counsel told the second trial judge that Pena's first counsel should have gone "to trial and made the argument that he's a functional co-tenant" instead of entering into the consent agreement. As such, the present argument was not properly raised to the judge and is considered waived. Nieder, 62 N.J. at 234.

trial judge; that argument was made only in support of his later application to another judge for a stay of the second trial judge's order.

Inasmuch as Pena failed to establish extraordinary circumstances warranting relief from the judgment, we see no abuse of discretion in the second trial judge's denial of Pena's request to vacate same. As the Court observed,

> [s]ignificantly, Rule 4:50-1 is not an opportunity for parties to a consent judgment to change their minds; nor is it a pathway to reopen litigation because a party either views his settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his original legal strategy. Rather, the [R]ule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result.
>
> [DEG, LLC v. Township of Fairfield, 198 N.J. 242, 261 (2009).]

To the extent not addressed, we determine Pena's remaining arguments are without sufficient merit to justify discussion in this opinion. R. 2:11-3(e)(1)(E).

Any stay previously entered is vacated, subject to any counteracting executive or omnibus judicial order concerning tenancies during the current COVID-19 pandemic.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3104-18T4